Clifford W. POTTER, Regional Director of Region 23 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

HOUSTON GULF COAST BUILDING TRADES COUNCIL, AFL–CIO, et al., Respondents.

Civ. A. No. 72–H–1571.

United States District Court, S. D. Texas, Houston Division.

Dec. 5, 1972.

1

Robert G. Levy, II, Houston, Tex., for petitioner.

W. Arthur Combs and William D. Yale, Jr., Houston, Tex., for Houston Gulf Coast Building Trades Council, AFL–CIO, United Association of Journeymen and Apprentices of the Pipefitting Industry of the United States and Canada, AFL–CIO, Local Union 68, International Association of Bridge, Structural and Ornamental Ironworkers, Local Union No. 84, Bricklayers, Masons and Plasterers' International Union of America, AFL–CIO, Local No. 7 of Texas and Operative Plasterers & Cement Masons International Association, AFL–CIO, Local 681 of Houston.

W. Wiley Doran, Houston, Tex., for International Brotherhood of Electrical Workers, Local Union 716.

William N. Wheat, Houston, Tex., for Carpenters District Council of Houston & Vicinity.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

Before this Court is a petition by the Regional Director of the National Labor Relations Board (N.L.R.B.) for a temporary injunction against respondents pending final determination of alleged unfair labor practice charges. This Court granted a temporary restraining order and, upon submission of stipulated facts (appended to this opinion) and a conference with counsel, is prepared to rule upon the petition for temporary injunction.

The National Labor Relations Act, as amended, provides that whenever it is charged that unfair labor practices have been committed, the N.L.R.B. shall conduct a preliminary investigation of such charge. If the officer or regional attorney to whom it was referred has reasonable cause to believe, following investigation, that such charge is true, he shall seek appropriate injunctive relief pending the final adjudication of the Board. 29 U.S.C. § 160(*l*). The cases clearly indicate that it is not the function of the District Court to determine whether, in fact, an unfair labor practice has been engaged in, but only to ascertain if reasonable cause exists to believe such violation occurred. This injunctive relief is interlocutory to a final disposition by the Board of the unfair labor practice charge. The ultimate determination on the merits is reserved exclusively for the Board, subject to judicial review by the Court of Appeals. The evidence need not establish a violation. It is sufficient if the evidence together with all the reasonable inferences that might be drawn therefrom supports a conclusion that there is reasonable cause to believe that a violation had occurred. For a typical case, *see* Madden v. International Hod Carriers Union, 277 F.2d 688 (7th Cir. 1960), cert. denied, 364 U.S. 863, 81 S.Ct. 105, 5 L.Ed.2d 86.

The parties involved in this litigation include the Regional Director of the N.L.R.B., the employer corporations herein referred to as Boley and Bullen, and numerous unions engaged in work at one or more of four jobsites. In capsule form, the respondents are opposed to the employment by Boley and Bullen of non-union labor who receive "substandard" wages. Following a refusal on November 1, 1972, by Bullen to agree to demands of the Houston Building and Construction Trades Council (hereinafter referred to as Houston Trades Council), which is composed of most of the respondent unions, picketing at four jobsites commenced. Allegedly, certain unfair labor practices in the form of secondary, "coercive" activity were undertaken by various unions and union officials as part of a campaign by the Houston Trades Council to stop all work at the jobsites until Boley and Bullen complied with union demands. All, or vir-

tually all, work on the jobsites did cease as employees, union and non-union alike, refused to work or failed to report for work. The stipulated facts are not recited here, inasmuch as they are set forth in full as Exhibit A attached hereto. Such stipulated facts will be referred to, where necessary, hereinafter as "Facts Item No. ——."

The positions of the respondents collectively are presented generally by three counsel. The majority of respondents, including Houston Trades Council, are represented by the same counsel. Also represented by counsel are International Brotherhood of Electrical Workers, Local Union 716 (hereinafter cited as Local 716), and Carpenters District Council of Houston & Vicinity (hereinafter cited as Carpenters). Respondents generally have stipulated that the facts would support the reasonable belief of the Regional Director that unfair labor practices have occurred and that a temporary injunction should issue. The main points of contention involve the scope of the injunction and the requirement contained therein that respondents take affirmative steps to secure the presence of employees on the job. Local 716 also raises the legal question of whether the alleged unfair labor practices may be imputed to its activities at two jobsites.

### A.

### SCOPE OF INJUNCTION

Both Houston Trades Council and Carpenters have questioned the propriety of a temporary injunction reaching otherwise lawful picketing. The petitioner's position is that the alleged unlawful coercion has become so enmeshed with the legal picketing that, as a practical matter, it will be necessary to enjoin all picketing in order to remove the taint of coercion from the employees as well as from the job sites. The Carpenters position may be seen from the following statements:

However trivial the alleged misconduct of the Carpenters may be in this case, and it is indeed trivial, we submit that not even the most outrageous unfair labor practice can give the Regional Director power to cancel altogether rights guaranteed by the Act.

Carpenters' Memorandum at 6. And also:

The present state of the law is really quite simple—the right to engage in primary strike activity remains inviolate, even though the proscription against picketing a gate used by neutral employers remains in force.

Id. at 13. Houston Trades Council, in support of this proposition, has cited several cases which separate lawful picketing from unlawful picketing. Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957); Consolidation Coal Co. v. Disabled Miners of Southern West Virginia, 442 F.2d 1261 (4th Cir. 1971), cert. denied, 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184; Squillacote v. Building and Construction Trades Council of Fond Du Lac County, 266 F.Supp. 971 (E.D.Wis.1967). Each of these has been considered carefully.

As has been noted previously, the initial responsibility for balancing the intricacies of labor disputes and the motivations and tactics used by either employer or union, or both, is placed upon the N.L.R.B. and its agents. Courts should normally defer to the Board and its expertise at the temporary injunction stage unless the facts strongly suggest that there is an abuse of discretion or, to phrase it differently, unless it appears that the evidence does not support a reasonable belief that the requested injunctive relief is required. Where the requested injunctive relief appears to be very broad, and the available evidence does not support a reasonable belief as to the necessity for such a remedy, then a District Court may exercise its discretion and trim the relief to fit the case. Otherwise, it should defer to the petitioner's expertise. Youngdahl, supra, which involved an injunction sought by an employer corporation in a state court, does not suggest a con-

trary result. The Supreme Court there held that the state court lacked equitable power to enjoin legal, peaceful picketing, although it might properly enjoin violent activity. The language of the Supreme Court is worthy of note:

> Though the state court was within its discretionary power in enjoining future acts of violence, intimidation and threats of violence by the strikers and the union, yet it is equally clear that such court entered the pre-empted domain of the National Labor Relations Board insofar as it enjoined peaceful picketing by petitioners.

Youngdahl v. Rainfair, 355 U.S. 131, 139, 78 S.Ct. 206, 211, 2 L.Ed.2d 151 (1957).

█ The other two cases noted, *Consolidated Coal* and *Squillacote, supra,* are closer in point. In each case the court separated lawful activities from unlawful activities. In neither case, however, was the problem of enmeshing involved. It is recognized that the "enmeshing" doctrine had its genesis in a Supreme Court case in which violence played a significant role. Milk Wagon Drivers Union of Chicago, Local 743 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S. Ct. 552, 85 L.Ed. 836 (1940). In the instant case this Court realizes that there is no such violence suggested. However, this Court is also aware that labor practices and tactics, as used by both employer and union, have become much more sophisticated over the years. Whether prohibited conduct in a given labor dispute has become so enmeshed as to require restriction of otherwise lawful conduct may well, in this day and age, require an equally sophisticated determination by labor experts. The facts of this case indicate coordinated activity by the respondents on the four jobsites. In light of these facts and the surrounding circumstances stipulated to by the parties, this Court feels obligated to defer to the expertise of the Regional Director in determining whether or not enmeshing has occurred so as to require this relief.

█ Having closely reviewed the facts and applicable law, this Court finds that the evidence supports a reasonable belief that the requested injunctive relief is necessary pending final determination of the alleged unfair labor practices.

## B.

### AFFIRMATIVE ACTS

█ The respondents object to this Court's directing certain affirmative action as a part of the order granting a temporary injunction. This relief, as requested by the Regional Director is as follows:

> IT IS FURTHER ORDERED that respondents, each of them, notify all employees that they represent who are employed by . . ., (named subcontractors) pursuant to order of this Court (that respondents) have no objections to said employees working for these respective employers on the jobsites . . . and that said respondents, each of them, will expect said employees to man these jobs if and when their employers request them to perform work on these jobs.

It is not unusual for the Board to request, and the Circuit Courts to order, affirmative conduct or relief by employers or unions to rectify unfair labor practices. As the Supreme Court has noted, this is " 'peculiarly a matter for administrative competence.' " Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964). The Fifth Circuit has also deferred frequently to the Board's competence in labor areas regarding orders of affirmative conduct following determinations of unfair labor practices. *See, e. g.,* N. L. R. B. v. Bush Hog, Inc., 405 F.2d 755 (5th Cir. 1968); N. L. R. B. v. George E. Light Boat Storage, Inc., 373 F.2d 762 (5th Cir. 1967); N. L. R. B. v. Exchange Parts Co., 339 F.2d 829 (5th Cir. 1965), reh. denied, 341 F.2d 584.

█ The above cases, and the vast majority of others discussing affirma-

**6**

tive orders, were decided after a final determination of alleged unfair labor practices. However, at least one Circuit has held that broad, affirmative relief may be required by a District Court pending the ultimate resolution of the unfair labor practices if the circumstances require such action to prevent a frustration of the ultimate administrative action. *Angle v. Sacks*, 382 F.2d 655, 661 (10th Cir. 1967). This Court believes that the logic applicable to affirmative orders after final resolution of unfair labor charges is equally applicable to determinations of the scope of temporary injunctions which occur obviously before such resolutions have been made. This is supported by *Angle v. Sacks*, *supra*. This Court must note that this is a grave power wielded by the N. L. R. B. and its agents and one which must not be subjected to abuse.

## C.

### LOCAL 716's CONTENTIONS

■ Local Union 716 raises two particular issues which must be resolved. First, it denies that any of its officers, agents or representatives encouraged or induced anyone to cease working or remain off the job. It is contended that the acts of other business agents, if deemed·improper, cannot be imputed to Local Union 716, citing Longshoreman's Union, 23 LRRM 1004, 79 NLRB No. 207 (1948). While the stipulated facts do not state that Local Union 716's business agent joined the entourage visiting jobsites, Facts Item No. 4(x), *infra*, Local 716 did establish a picket at the St. James project on or about November 9, 1972, *Id.*, No. 4(q), which was moved the following day to the reserve gate, *Id.*, No. 4(r), and also may have been instrumental in preventing the employees of Wohlt Electric, Inc. from reporting to the Memorial Terrace jobsite. *Id.* No. 4(y). Second, Local 716 contends that even if it should be found that there was illegal activity in connection with the Memorial Terrace job, this should not be imputed to the lawful picketing at the St. James jobsite, citing Chauffeurs Lo-

cal 175 v. N. L. R. B., 111 U.S.App.D.C. 65, 294 F.2d 261 (1961). While both of these contentions may have some validity in a narrow context, respondents' position as to such isolated incidents cannot be controlling here. As the Second Circuit has noted, activities such as these should be considered within the boundaries of the overall labor dispute. J. P. Stevens & Co. v. N. L. R. B., 380 F.2d 292, 300 (2d Cir. 1967), cert. denied, 389 U.S. 1005, 88 S.Ct. 564, 19 L. Ed.2d 600.

■ Reviewing the record as a whole, this Court finds that the evidence supports a reasonable belief by the Regional Director that Local 716 was participating in the coordinated attempt by the Houston Gulf Coast Building Trades Council and its members in the dispute with Boley and Bullen. Thus, such conduct would also support a reasonable belief by the Regional Director at this time that Local 716's activities were "enmeshed" in some manner in the overall controversy.

### CONCLUSION

■ This Court is well aware of the difficulties which may arise in separating lawful conduct from prohibited conduct. *See, e. g.*, Local 761, International Union of Electrical, Radio and Machine Workers, AFL–CIO v. N.L.R.B., 366 U. S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961); Markwell and Hartz, Inc. v. N. L.R.B., 387 F.2d 79 (5th Cir. 1967), cert. denied, 391 U.S. 914, 88 S.Ct. 1808, 20 L.Ed.2d 653. This Court is also acutely aware that the rights of the unions should not be carelessly restricted.

> Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right.

29 U.S.C. § 163. Nevertheless, this section must be read in conjunction with section 10(*l*) of the Act which authorizes injunctive relief. 29 U.S.C. § 160(*l*).

Douds v. International Longshoremen's Ass'n, 241 F.2d 278, 285 (2d Cir. 1957).

In light of the foregoing, this Court believes that an appropriate "test" to be applied is one whereby the relief requested by a Regional Director or his agents should be granted when evidence supporting a "reasonable belief" is shown, unless it can be demonstrated that the relief requested is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act. *See* N.L.R.B. v. Seven-Up Bottling Co., 344 U.S. 344, 347, 73 S.Ct. 287, 97 L.Ed. 377 (1952). For an example of such a patent attempt, see American Ship Building Co. v. N.L.R.B., 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965).

Because of the attendant infringement upon otherwise lawful activity of the respondents, this Court has been particularly concerned with the length of administrative delay likely to result before a final determination of the unfair labor charges and a possible request to dissolve the temporary injunction. This Court understands that this procedure may take from three months to a year or longer. As a practical matter, the respondents are being prohibited from airing legitimate labor complaints by legitimate means at these jobsites. It is likely that construction will be completed prior to that time. In light of this situation, the Court expects and directs that all due diligence be exercised by the Regional Director and his agents to resolve this matter.

This Court also notes that respondent unions neglected to communicate with their counsel before engaging in picketing or related conduct which might be characterized as "borderline" or "coercive". This Court suggests that in a particularly close case the test of "reasonable belief", as set forth above might well be affected by the presentation of affirmative evidence of a good-faith effort on the part of labor unions to follow only permissible procedures and practices in registering their dispute with an employer. Had counsel been contacted by the various respondents prior to engaging in some of the practices herein alleged, this entire problem might not have arisen.

In summation, this Court, upon the consideration of the pleadings, evidence, briefs, arguments of counsel, and the entire record in this case, finds no reason why it should not defer to the discretion and expertise of the Regional Director. The requested temporary injunction is granted.

## APPENDIX

### EXHIBIT A

### STIPULATION

Comes now the parties to the above-styled and numbered cause and enters into this, a stipulation of fact, for the consideration of the Court. It is understood by all of the parties herein that said stipulation is solely for the purpose of this proceeding, and is not intended in any way to bind, prejudice or limit the parties in any proceeding of any other type or nature.

1. Petitioner is the Regional Director of Region 23 of the National Labor Relations Board, an agency of the United States, and files the petition herein for and on behalf of the Board.

2. On or about November 20, 1972, Bullen Corporation (herein called Bullen) and Boley Construction Company (herein called Boley), pursuant to the provisions of the Act, filed charges with the Board alleging, *inter alia*, that Houston Gulf Coast Buildings Trades Council, AFL–CIO; International Brotherhood of Electrical Workers, Local Union 716; United Association of Journeymen & Apprentices of the Plumbing and Pipefitting Industry of the United States & Canada, AFL–CIO, Local Union 68; International Association of Bridge, Structural and Ornamental Ironworkers, Local Union 84; Bricklayers, Masons and Plasterers' International Union of America, AFL–CIO, Local No. 7 of Texas; Laborers' International Un-

ion of North America, Local Union No. 18, AFL–CIO; Operative Plasterers & Cement Masons International Association, AFL–CIO, Local 681 of Houston and Carpenters District Council of Houston & Vicinity (herein called Respondents), labor organizations, have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b)(4)(i)(ii)(B) of the Act.

3. The aforesaid charges were referred to petitioner as the Regional Director for Region 23 of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondents, and each of them, are unincorporated associations, organizations in which employees participate, and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) At all times material herein, the below-named have been agents of each respective respondent:

Peewee Graham, Building Trades Council

Roy Noack, IBEW Local 716

Kenneth W. Yarborough, Plumbers Local Union No. 68

H. A. "Pinky" Brown, Bricklayers Local 7

Travis Smith, Cement Masons Local 81 of Houston

.Dewey Upshaw, Ironworkers Local 84

Jack O. Fountain, Carpenters District Council.

(c) Respondents maintain their principal offices and place of business in Houston, Texas, and at all times material herein, respondents have engaged within this judicial district in transacting business and promoting and protecting the interests of their employee-members.

(d) Bullen is a Texas Corporation with its principal office and place of business located at Houston, Texas, where it is engaged in the building and construction industry as a general contractor. At all times material herein, Bullen has maintained contracts which will provide gross revenue in excess of $2,000,000 in respect to jobsites located at 1885 St. James Place, Houston, Texas; 100 Waugh Drive, Houston, Texas and 3303 Audley, Houston, Texas.

(e) Boley is a Texas Corporation which is engaged in the building and construction business as an apartment contractor. During the preceding twelve months, a representative period, Boley purchased goods and materials valued in excess of $50,000 which originated from points outside the State of Texas and were shipped directly to Boley's Houston, Texas operations. Boley has a job project located at 4543 Post Oak Place Drive, Houston, Texas.

(f) Jim Doyle Company, Inc., is a Texas corporation which is engaged in the building and construction industry as a structural steel contractor. During the preceding twelve months, a representative period, Jim Doyle Company, Inc. had construction contracts with Bullen and Boley. During the preceding twelve months, a representative period, Jim Doyle Company, Inc. purchased goods and materials valued in excess of $50,000 which were shipped directly to it from points outside the State of Texas for use on its Houston, Texas jobs for Bullen and Boley.

(g) Shelton W. Greer Company, Inc., is a Texas corporation with its principal office and place of business located in Houston, Texas, where it is engaged in the building construction industry as a specialty subcontractor and has contracts with Boley for the installation of roof decking and corrugated steel forms for Boley's jobsite located at 4543 Post Oak Place Drive, Houston, Texas. During the preceding twelve months, a representative period, Shelton W. Greer Company, Inc. purchased goods and materials valued in excess of $50,000 which were shipped directly to its Houston, Texas jobsites from points and places outside the State of Texas.

(h) Gilbert Plumbing Company, Inc., is a Texas corporation with its principal

office and place of business located in Bellaire, Texas, where it is engaged in the building construction industry as a plumbing contractor. Gilbert Plumbing Company, Inc. has a contract with Boley for the installation of all plumbing and fire protection lines at the jobsites of Boley at 4543 Post Oak Place Drive, Houston, Texas. During the preceding twelve months, a representative period, Gilbert Plumbing Company, Inc. purchased goods and materials valued in excess of $50,000 which were shipped directly to its Houston, Texas jobsites from points and places located outside the State of Texas.

(i) Since on or about November 1, 1972, Respondent, Houston Gulf Coast Building Trades Council, AFL–CIO, has demanded that Bullen recognize Respondents and bargain with Respondents in respect to rates of pay, hours of work, and other terms and conditions of employment for Bullen's employees.

(j) Respondents, nor any one of them individually, are not and have not been certified as representatives of Bullen's employees under the provisions of Section 9 of the Act.

(k) At no time material herein have Respondents, or any of them, individually, had any labor disputes with Gilbert, Greer, Doyle, Hoggatt, Smith-Southern, Wohlt Electric, Inc., Dearborn Mechanical Company, Inc., or any other contractor with whom respondents, each or severally, maintain a contractual relationship.

(l) On or about November 1, 1972, Sheet Metal Workers Local 54 placed a picket on the Boley jobsite located at 4543 Post Oak Place Drive, Houston, Texas with a picket sign that stated:

SHEET METAL WORKERS L.U.P. # 54 AFL–CIO PROTEST SUBSTANDARD WAGES AND CONDITIONS BEING PAID ON THIS JOB BY ALL–YEAR AIR CONDITIONING.

SHEET METAL WORKERS L.U.P. # 54 DOES NOT INTEND BY THIS PICKET LINE TO INDUCE OR ENCOURAGE THE EMPLOYEES OF ANY OTHER EMPLOYER TO ENGAGE IN A STRIKE OR CONCERTED REFUSAL TO WORK.

(m) On or about November 2, 1972, Boley notified the Sheet Metal Workers that a reserve gate, or a separate entrance, had been established for the Sheet Metal Workers and their dispute with All-Year Air Conditioning.

(n) Upon notification, the Sheet Metal Workers Local Union No. 54, moved its picketing to the reserve entrance provided for it.

(o) On or about November 2, 1972, Respondent, Houston Gulf Coast Building & Construction Trades, AFL–CIO, caused a picket to be placed on a job project known as the Memorial Terrace job located at 100 Waugh Drive, Houston, Texas, with a picket legend that stated:

HOUSTON GULF COAST BUILDING & CONSTRUCTION TRADES COUNCIL, AFL–CIO, PROTEST SUBSTANDARD WAGES BEING PAID ON THIS JOB BY BULLEN CORPORATION.

HOUSTON GULF COAST BUILDING & CONSTRUCTION TRADES COUNCIL DOES NOT INTEND BY THIS PICKET LINE TO INDUCE OR ENCOURAGE THE EMPLOYEES OF ANY OTHER EMPLOYER TO ENGAGE IN A STRIKE OR CONCERTED REFUSAL TO WORK.

(p) On or about November 3, 1972, Respondent, Houston Gulf Coast Building and Construction Trades Council, AFL–CIO, was notified of the establishment of a reserve gate, or separate entrance, for employees of Bullen, and upon said notification, Respondent, aforesaid, removed its picketing to said reserve gate and entrance.

(q) On or about November 9, 1972, Respondent, International Brotherhood of Electrical Workers, Local Union 716, caused a picket to be placed at the St. James project located at 1885 St. James Place, Houston, Texas, using the following picket legend:

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS L.U. 716, AFL–CIO, PROTEST SUBSTANDARD WAGES BEING PAID ON THIS JOB BY CASEY ELECTRIC CO.

L.U. 716 DOES NOT INTEND BY THIS PICKET TO INDUCE OR ENCOURAGE ANY EMPLOYEES OF ANY OTHER EMPLOYER TO ENGAGE IN A STRIKE OR ENGAGE IN A CONCERTED REFUSAL TO WORK.

(r) On or about November 10, 1972, a separate entrance or reserve gate was established for the use of Casey Electric Co.'s employees and no others, Respondent, Electrical Workers, was so notified, and Respondent, Electrical Workers, removed their picketing to the reserve gate provided for the exclusive use of Casey Electric Co.

(s) On or about November 10, 1972, Respondent, Carpenters District Council of Houston & Vicinity, placed a picket on the jobsite known as the Norris of Houston job, located at 3303 Audley, Houston, Texas, with the following legend:

CARPENTERS DISTRICT COUNCIL OF HOUSTON & VICINITY PROTESTS SUBSTANDARD WAGES BEING PAID ON THIS JOB BY BULLEN CORPORATION. CARPENTERS DISTRICT COUNCIL OF HOUSTON & VICINITY DOES NOT INTEND BY THIS PICKET TO INDUCE OR ENCOURAGE ANY EMPLOYEES OF ANY OTHER EMPLOYER TO ENGAGE IN A STRIKE OR A CONCERTED REFUSAL TO WORK.

(t) On or about November 11, 1972, Respondent, Carpenters District Council of Houston & Vicinity, was notified of the establishment of a reserve gate for the sole and exclusive use of Bullen Corporation employees and no others.

(u) Subsequent to such notification, Respondent, Carpenters District Council of Houston & Vicinity, continued its picketing at points and places on this jobsite, other than said reserve gate.

(v) Commencing on or about November 10, 1972, Respondent, Bricklayers' Business Agent, H. A. Brown, came out to the St. James jobsite and spoke with employees of Smith-Southern Corporation, and stated that said employees should not be working behind a picket line. Brown repeated this action on a number of occasions, including November 16, 1972, and on November 17, 1972 arrived at said jobsite with union charges directed against all of those employees of Smith-Southern Corporation who were working on this job contrary to his statements.

(w) Respondent, Bricklayers' Business Agent, H. A. Brown, engaged in the same conduct as is described directly above in that he went to the Smith-Ley jobsite and approached the employees of Hoggatt, Inc., seeking to have them leave the job. On November 17, 1972, Brown charged those individuals working for Hoggatt in the same manner that he had charged those individuals working for Smith-Southern Corporation.

(x) On or about November 16, 1972, various business agents of most respondents and other business agents who are not named respondents herein, arrived on the Smith-Ley jobsite, and the Memorial Terrace jobsite. These business agents spoke with all contractors who were working on the job, and in the case of Respondent, Ironworkers' Business Agent, Dewey Upshaw, he caused the employees working at that time for Jim Doyle Company, Inc. to leave the jobsite.

(y) Commencing on or about November 8 or 9, 1972, and at various times thereafter, employees of Wohlt Electric, Inc., spoke with Respondent's Electrical Workers Local 716 Business Agent Roy Noack. Said employees asked Noack whether to man the Memorial Terrace jobsite of Bullen. After speaking with Noack, the employees of Wohlt did not report to the jobsite.

(z) The employees of Gilbert, Greer, Doyle, Hoggatt, Smith-Southern, Wohlt Electric, and Dearborn and other secondary employers and persons engaged in commerce, or an industry affecting commerce, ceased work and refused to work, beginning November 1, 1972 through December 1, 1972.

Approved:

(s) Robert G. Levy II
    Robert G. Levy II

Attorney for Petitioner

(s) W. Arthur Combs
    W. Arthur Combs

(s) William D. Yale, Jr.
    William D. Yale, Jr.

Attorneys for Respondents, Houston Gulf Coast Building Trades Council, AFL–CIO;
United Association of Journeymen and Apprentices of the Pipefitting Industry of the United States and Canada, AFL–CIO, Local Union 68;
International Association of Bridge, Structural and Ornamental Ironworkers, Local Union No. 84;
Bricklayers, Masons and Plasterers' International Union of America, AFL–CIO, Local No. 7 of Texas and Operative Plasterers & Cement Masons International Association, AFL–CIO, Local 681 of Houston.

(s) Wiley Doran
    W. Wiley Doran

Attorney for Respondent, International Brotherhood of Electrical Workers, Local Union 716.

(s) Wm. N. Wheat
    William N. Wheat

Attorney for Respondent, Carpenters District Council of Houston & Vicinity.