**Clifford W. POTTER, Regional Director of Region 23 of the National Labor Relations Board, etc., Petitioner-Appellee,**

v.

**HOUSTON GULF COAST BUILDING TRADES COUNCIL, AFL-CIO, et al., Respondents-Appellants.**

No. 73-1187.

United States Court of Appeals, Fifth Circuit.

Aug. 10, 1973.

W. Arthur Combs, W. Dickinson Yale, Jr., Houston, Tex., for Houston Gulf.

Hugh E. Hackney, Houston, Tex., for Bullen and Boley.

Wiley Doran, Houston, Tex., for Int'l Electrical Workers.

William N. Wheat, Houston, Tex., for Carpenters Dist. Council.

Robert G. Levy, N. L. R. B., Region 23, Houston, Tex., Julius G. Serot, Sp. Counsel, N. L. R. B., Marvin Roth, Su-

pervisory Atty., Washington, D. C., for petitioner-appellee.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

In this case we are concerned solely with the scope of the equitable relief granted by the district court, 363 F. Supp. 1. Appellants are several unions all members of the Houston Gulf Coast Building and Trades Council. They contend that the relief fashioned by the court below is unnecessarily broad insofar as it bars them from engaging in peaceful primary picketing. We conclude that the scope of the injunctive relief granted is overbroad and should be modified; otherwise we affirm the order of the district court.

This litigation arose out of a labor dispute between appellants and two construction companies, Bullen Corporation (Bullen) and Boley Construction Company (Boley). The case was submitted to the district court upon the following stipulated facts. Bullen is a general contractor engaged in and supervising three separate construction projects in Houston, Texas. In November of 1972 appellant Houston Gulf Coast Building and Trades Council and its component unions commenced efforts to organize Bullen's employees. Pickets were established at each of Bullen's three jobsites; they carried signs protesting the allegedly substandard wages paid by Bullen. Bullen immediately notified the unions that a reserve gate for the exclusive use of its employees would be set aside at each jobsite.

While at two of the jobsites appellants confined their picketing to the gates reserved for Bullen's employees, at the third, picketing continued at entrances and other places used by the employees of union subcontractors. In addition union business agents visisted each jobsite and advised employees of the various union subcontractors working at the same jobsites that they should not cross the picket lines. Employees who did not follow this advice were informed that union charges would be filed against them. As a result of these threats and other union activities, employees of the union business agents visited each jobsites stopped working, and Bullen's construction projects were brought to a standstill.

Like Bullen, Boley is a general contractor operating in the Houston area. At one of its construction projects a subcontractor was using nonunion labor. A union of sheet metal workers not involved in this appeal began picketing to protest the wages paid by this subcontractor. When a reserve gate was established for the use of the offending subcontractor's employees, picketing was confined to it. But some of appellant's business agents visited the jobsite and ordered all union employees to cease working behind the picket line. Union charges were served upon those who continued to work contrary to this order. As a result the several union subcontractors on the Boley jobsite were all forced to stop work even though they had no dispute with appellants.

Thus at all of the construction sites in question the unions exerted pressure on Boley and Bullen by inducing members who were employed by neutral subcontractors to strike. Both companies filed charges with the National Labor Relations Board alleging that appellants were engaging in unfair labor practices violative of § 8(b)(4)(i)(ii)(B) of the National Labor Relations Act,[1] the section proscribing secondary boycotts. Following a preliminary investigation, the regional director of the NLRB concluded that there was reasonable cause to believe the companies' allegations. A complaint against the unions was issued. Pursuant to § 10(l) of the Act,[2] the regional director petitioned the district court for appropriate interim injunctive relief pending a final disposition of the charges before the Board.

1. 29 U.S.C. § 158(b)(4)(i)(ii)(B).

2. 29 U.S.C. § 160(l).

■ The district court reviewed the stipulation of facts submitted by the parties and determined that the regional director did have reasonable cause to believe that appellants were violating the Act as charged. Appellants do not contest this determination. The facts to which the parties stipulated provide more than ample cause to believe that the unions were engaged in illegal secondary activity violative of § 8(b)(4). Although the line between primary and secondary activity is often especially difficult to draw when two employers are performing separate tasks on common premises, the courts have held time and again that tactics such as those employed by the unions in this case fall on the secondary side of the line.[3]

Having properly concluded that the regional director's petition was meritorious, the district court proceeded to fashion interim injunctive relief. The unions were enjoined from further picketing at any of the Bullen or Boley jobsites and from in any other manner inducing neutral employees to exert pressure upon their employers so as to force them to cease doing business with Bullen or Boley. In addition the unions were required to notify all members employed by neutral subcontractors that the unions had no objection to their returning to work and that they were expected to man their jobs upon the request of their employers.

Appellants contend that the injunctive relief granted by the district court is overbroad insofar as it prohibits them from engaging in peaceful picketing in front of gates reserved for the exclusive use of the employees of the employers with whom they are at odds. They also protest the portion of the district court decree requiring them to order their striking members to report to work upon request. The regional director, on the other hand, takes the position that here the peaceful primary picketing was so enmeshed with the illegal secondary activity as to be inseparable from it. He argues that to enjoin the latter without at the same time enjoining the former would be useless since the picketing serves as a signal to all union employees to remain on strike until otherwise directed. In considering remedies the district court felt compelled to defer to the expertise of the regional director, and, relying primarily upon the authority of Milk Wagon Drivers v. Meadowmoor Dairies[4]—a case in which the Supreme Court affirmed an injunction against picketing which was accompanied by flagrant violence—it adopted the broad decree he recommended.

■ It has often been said that the provisions of § 8(b)(4) reflect "the dual congressional objectives of preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others from pressures in controversies not their own."[5] The statute prohibits all union activity "where . . . an object thereof is forcing or requiring" an employer to cease doing business with "any person."[6] Although the language of § 8(b)(4) is quite broad, it bans only secondary activity. Peaceful primary activity and its normal incidents are not

---

3. Markwell and Hartz, Inc. v. N.L.R.B., 387 F.2d 79 (5th Cir. 1967).
   See also N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); N.L.R.B. v. Lafayette Building & Construction Trades Council, 445 F.2d 495 (5th Cir. 1971); Superior Derrick Corp. v. N.L.R.B., 273 F.2d 891 (5th Cir.), cert. denied, 364 U.S. 816, 81 S.Ct. 47, 5 L.Ed. 2d 47 (1960), and N.L.R.B. v. Truck Drivers & Helpers, Etc., 228 F.2d 791 (5th Cir. 1956).

4. 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941).

5. N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 692, 71 S.Ct. 943, 953 (1951) and N.L.R.B. v. Lafayette Building & Construction Trades Council, 445 F.2d 495, 497 (5th Cir. 1971).

6. 29 U.S.C. § 158(b)(4).

forbidden and in fact are specifically exempted from the section's coverage.[7]

■ Thus, whenever possible, a grant of equitable relief should be carefully tailored so as to permit the continuation of primary activities while stamping out the illegal secondary conduct and its deleterious impact.[8] This principle was implicitly recognized by the Supreme Court in Youngdahl v. Rainfair,[9] a case involving a union which had combined picketing with threats, intimidation, and acts of violence. A state court had enjoined all union activity for the immediate future, but the Supreme Court set aside the injunction insofar as it prohibited peaceful picketing. The Court plainly indicated that at least initially the lower court should have halted only the illegal activity; further relief could then be granted if proven necessary. Although there was no secondary activity in the case, *Youngdahl* nevertheless suggests that, if possible, equitable relief in a labor dispute should not be drawn so broadly as to limit the statutorily protected right of unions to bring peaceful primary pressure to bear on employers with whom they have grievances. By proceeding in this manner the courts will insure that both *congressional objectives embodied in § 8(b)(4)* will be recognized, namely, that of prohibiting secondary activity while permitting primary activity to continue.

■ In this case there is no evidence of the kind of violence condemned in *Meadowmoor Dairies* or indeed of any violence at all. Appellants' activities, including both the primary picketing and the exertion of secondary pressures, were all peacefully conducted. In these circumstances we believe the district court abused its discretion in ordering a halt to peaceful primary picketing. As long as the unions restrict their picketing to the immediate vicinity of the reserve gates set aside for the use of the employees of the employers against whom their protests are directed, it should be allowed to continue in the absence of violence.

■ On the other hand insofar as the district court's decree enjoined other union activity designed to coerce neutral employees and ordered the unions to inform these employees that the union no longer objected to a return to work, it constituted a proper exercise of the court's discretion and is affirmed. This part of the decree was intended to halt the illegal secondary activity and to remedy its effects. In the first instance it should have been sufficient. If subsequent events demonstrate this relief to be inadequate—for instance if it becomes clear that the primary picketing operates as nothing more than a signal to neutral employees to remain on strike— then the district court can always respond in an appropriate manner.

Under the facts and in the circumstances disclosed by the record now before us, we modify the injunctive relief ordered by this district court insofar as it prohibits peaceful primary picketing, and that portion of the order is vacated and set aside. The remainder of its order is left intact, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

Modified, affirmed and remanded.

---

7. *Id.*

8. *See* Chauffeurs, Teamsters, and Helpers Local No. 175 v. N.L.R.B., 111 U.S.App. D.C. 65, 294 F.2d 261 (1961).

9. 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957).