745 F.2d 1289
 117 L.R.R.M. (BNA) 3028, 102 Lab.Cas. P 11,237
 Wilford W. JOHANSEN, Regional Director of Region 21 of the
National Labor Relations Board, for and on Behalf
of the NATIONAL LABOR RELATIONS BOARD,
Petitioner-Appellee,
v.
SAN DIEGO COUNTY DISTRICT COUNCIL OF CARPENTERS OF the
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,
AFL-CIO; Southern California District Council of Laborers
and Its Affiliated Local Union 89, Affiliated With the
Laborers' International Union of North America, AFL-CIO;
Operative Plasterers and Cement Masons International
Association, Local Union 744, AFL-CIO; Building Material
and Dump Truck Drivers Teamsters Local Union No. 36,
Affiliated With the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America; San Diego
County Building & Construction Trades Council, Respondents-Appellants.
 Nos. 83-5965, 83-6065.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1984.
Decided Oct. 26, 1984.
 
 Janette Johnson, Washington, D.C., Thomas Tosdal, Georgiou & Tosdal, San Diego, Cal., for petitioner-appellee.
 Richard D. Prochazka, San Diego, Cal., Gordon K. Hubel, Levy & Goldman, Los Angeles, Cal., for respondents-appellants.
 Appeal from the United States District Court for the Southern District of California.
 Before CHOY, Senior Circuit Judge, and NELSON and CANBY, Circuit Judges.
 PER CURIAM:
 
 
 1
 The setting of this case is a heated labor dispute between three unions and seven general contractors at twelve different construction sites. We consider whether the injunctive relief ordered by the United States District Court for the Southern District of California was appropriate. We conclude that it was not and reverse the district court's order.
 
 I. BACKGROUND
 
 2
 The appellants ("Unions") and a number of general contractors in the building and construction industry were parties to the 1980-1983 San Diego County Master Labor Agreement ("MLA"), which expired on June 15, 1983. On June 8, the Associated General Contractors of America, a multi-employer association, reached agreement with the Unions on the terms of a new MLA to be effective from June 16, 1983, through June 15, 1986. The general contractors had not agreed to be bound by the negotiations for the new MLA and refused to abide by its terms.
 
 
 3
 In June of 1983, seven general contractors were engaged in work at twelve different construction sites. On June 15, the Unions went on strike against these general contractors and picketed the construction sites the next day. On June 17, the seven general contractors filed charges with the National Labor Relations Board ("NLRB"). They alleged that the Unions were engaging in unfair labor practices in violation of section 8(b)(4)(ii)(A) of the National Labor Relations Act (the "Act"), 29 U.S.C. Sec. 158(b)(4)(ii)(A), which proscribes certain "hot cargo" agreements, and section 8(b)(4)(ii)(B), 29 U.S.C. Sec. 158(b)(4)(ii)(B), which proscribes secondary boycotts.
 
 
 4
 The general contractors charged the Unions with not confining their picketing to the construction site gates which were specifically reserved for the contractors, their employees, suppliers, and customers. Rather, the Unions also picketed the gates reserved for neutral subcontractors, their employees, and suppliers.
 
 
 5
 In their picketing from June 16 until at least June 24, the Unions apparently utilized an identical picket sign at all construction sites, which stated:
 
 CARPENTERS-LABORERS-TEAMSTERS
 AND CEMENT MASONS
 AFL-CIO
 ON STRIKE
 
 6
 [NAME OF TARGETED CONTRACTOR]
 
 NO AGREEMENT
 SANCTIONED BY
 SAN DIEGO COUNTY
 BUILDING TRADES COUNCIL
 
 7
 In addition, the general contractors charged that the Unions distributed several different leaflets to their members instructing them to honor all picket lines. As a result of the Unions' picketing at entrances reserved for neutral employers, employees of neutral subcontractors at most, if not all, of the twelve jobsites declined to cross the picket lines.
 
 
 8
 The NLRB's Regional Director investigated the charges and found reasonable cause to believe the Unions had violated the Act. On July 1, the Regional Director petitioned the United States District Court for the Southern District of California for injunctive relief, pursuant to section 10(l ), 29 U.S.C. Sec. 160(l ), pending final disposition of the charges by the NLRB. On July 14, the district court granted a temporary injunction, finding reasonable cause to believe that the Unions had violated section 8(b)(4)(ii)(B) of the Act, and that their acts and conduct would likely be repeated unless enjoined. The court did not reach the "hot cargo" issue. In part "B" of the injunction, the court ordered the Unions not to engage in any prohibited actions against secondary employers. In part "A", the court enjoined the Unions from any picketing or leafleting at the twelve construction sites for a period of ten days "in order to dissipate the residual effects of any prior unlawful picketing."[1] The Unions primarily contest the validity of this part of the order.
 
 II. DISCUSSION
 A. Mootness
 
 9
 Appellee NLRB argues that the Unions' appeal from the court's order directing a ten-day hiatus in all picketing and leafleting is moot. This order expired by its own terms on July 24, 1983. The Unions complied with this part of the order so there are no civil or criminal contempt proceedings pending.
 
 
 10
 An action is not moot if it is "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The satisfaction of this test requires the combination of two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975); Planned Parenthood v. Arizona, 718 F.2d 938, 949 (9th Cir.1983).
 
 
 11
 In this case, the "challenged action," which was the ten-day injunction, was "too short to be fully litigated prior to its cessation or expiration." This part of the Weinstein test is often satisfied when a court order, by its own terms, expires in a few days. See Planned Parenthood, 718 F.2d at 949-50. For example, in Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), a Nebraska state judge, in anticipation of a trial for a multiple murder, entered an order restraining the press from publishing or broadcasting accounts of any confessions. The order expired by its own terms when the jury was impaneled. Id. at 546, 96 S.Ct. at 2797. The Court nevertheless held that the constitutional dispute was not moot, stating it would "evade review, or at least considered plenary review in this Court, since these orders are by nature short-lived." Id. at 547, 96 S.Ct. at 2797. Similarly, the court's order in this case directing a ten-day hiatus in all picketing and leafleting expired by its own terms before formal review could be had. See also Carroll v. President of Princess Anne, 393 U.S. 175, 177-79, 89 S.Ct. 347, 349-51, 21 L.Ed.2d 325 (1968) (ten-day order); Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. at 515, 31 S.Ct. at 283 (short term ICC order).
 
 
 12
 The NLRB argues that the "evading review" requirement of the Weinstein test can be satisfied only when "under no foreseeable circumstances could appellants obtain ... review," citing Barbour v. Central Cartage, Inc., 583 F.2d 335, 337 (7th Cir.1978) (quoting First National Bank v. Bellotti, 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978)). The NLRB contends that review is possible because the Unions have the opportunity to obtain a stay pending appeal. This court denied such a stay on July 15, 1983, one day after the injunction order was issued.
 
 
 13
 The NLRB's reading of the first requirement of the Weinstein test, however, is incorrect.[2] This part of the test requires the challenged action to be too short in its duration to be "fully litigated." A court's consideration of an emergency stay, which in this case was denied in less than a day, cannot constitute a full review of an action in the sense contemplated by the Supreme Court in Weinstein. See British Caledonian Airways Ltd. v. Bond, 665 F.2d 1153, 1158 (D.C.Cir.1981) (that court may be able to grant emergency relief is not enough to satisfy first requirement of Weinstein test).[3] The NLRB's interpretation of the Weinstein test also would render it meaningless because there is always some "foreseeable circumstance" in which a court could hastily review a particular matter. Under the first requirement of the Weinstein test, therefore, the ten-day hiatus in all picketing and leafleting "was in its duration too short to be fully litigated prior to its cessation or expiration."
 
 
 14
 The second part of the Weinstein test requires a "reasonable expectation that the same complaining party would be subjected to the same action again." This is not the first instance of a labor dispute between the Unions and the general contractors. These parties will continue to face each other across the bargaining table. See Trans International Airlines v. International Brotherhood of Teamsters, 650 F.2d 949, 957 n. 5 (9th Cir.1980).
 
 
 15
 Moreover, the Regional Director will likely continue to request short term injunctions on lawful primary picketing in order to dissipate the residual effects of unlawful picketing. See Nebraska Press Association v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976) (dispute "capable of repetition" because court below authorized state prosecutors to seek orders restraining press). In fact, a general contractor requested the district court to impose another picketing hiatus on August 30, 1983. There is a reasonable expectation that the Unions will be subjected to another picketing hiatus.
 
 
 16
 We are also persuaded that our conclusion--that this issue is not moot--is correct particularly because the appropriateness of an injunction is at issue in this case. In Walker v. Birmingham, 388 U.S. 307, 314, 87 S.Ct. 1824, 1828, 18 L.Ed.2d 1210 (1967), the Supreme Court held that the proper procedure for challenging the constitutionality of an injunction is to seek judicial review rather than risk contempt. The Unions here have pursued the course indicated by Walker. To find that the Unions' action is now moot would contravene this important procedural policy. See Carroll v. President of Princess Anne, 393 U.S. at 179, 89 S.Ct. at 350; Brown v. Board of Bar Examiners of State of Nevada, 623 F.2d 605, 609 (9th Cir.1980).
 
 
 17
 CANBY, Circuit Judge, joined by NELSON, Circuit Judge, for the court:
 
 B. The Hiatus Order
 
 18
 The right to engage in peaceful primary picketing is protected by both the first amendment, Thornhill v. Alabama, 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1940); NAACP v. Claiborne Hardware Co., 458 U.S. 886, 909, 102 S.Ct. 3409, 3424-25, 73 L.Ed.2d 1215 (1982); and the National Labor Relations Act, see 29 U.S.C. Secs. 157, 158(b)(4)(B) (1982). We have recently emphasized that such picketing, as a mixture of speech and conduct, may be enjoined only " 'if [the injunction] furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than essential to the furtherance of that interest.' " Miller v. United Food & Commercial Workers Union, 708 F.2d 467, 472 (9th Cir.1983) (quoting United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). For two reasons, we cannot uphold the district court's "hiatus" injunction.
 
 
 19
 Under Miller, preventing the perpetuation of unlawful secondary activity qualifies as an important governmental interest. Id. at 471. That objective accordingly can serve in the proper situation to justify a hiatus in all picketing. Id. A prerequisite to a hiatus injunction, however, is that the district court make "findings of fact specifically directed toward its decision to halt all picketing." Id. We must be provided with fact findings that inform us whether the hiatus injunction of primary picketing will help prevent the perpetuation of the effects of the unlawful secondary boycott. Without that information, we cannot fulfill our function of review.
 
 
 20
 The district court's decision does not meet the requirement. The district court made a conclusory finding that "without [a hiatus injunction] the effects of prior illegal activities will be perpetuated." But the court did not provide supporting findings. Despite our suggestions in Miller, see id. at 471, there are no findings to inform us whether a hiatus injunction was necessary to prevent continued lawful picketing from serving as a "signal" for the continuation of the unlawful secondary activities, or whether the order was necessary because of the dire financial problems created by the unlawful activities.
 
 
 21
 Indeed, the district court's comments suggest to us that the order may have been based on improper considerations. The district court explained:
 
 
 22
 I feel there is no alternative. An order by me limiting picketing to only those gates legally picketed would be no more than a reiteration of what respondents' current legal obligation is, and would in my judgment be ineffective as this is an obligation that they have thus far been unable to meet.
 
 
 23
 The thrust of the district court's statement is that to enjoin only secondary picketing would simply be to order the Unions to obey the law. But in the ordinary case, the purposes of sections 10(l ) and 8(b)(4) are perfectly well served by an injunction requiring the offending Unions to obey the law. See Potter v. Houston Gulf Coast Building Trades Council, 482 F.2d 837, 841 (5th Cir.1973). It is only in the exceptional case that primary picketing may be enjoined, preferably only after an injunction limited to the secondary picketing has been tried and failed. Id. No such limited relief was attempted here.
 
 
 24
 A second prerequisite to the issuance of a hiatus order is that the district court "carefully tailor its injunction in order to permit the maximum amount of legitimate activity while erasing the illegal ... conduct and its deleterious impact. Miller, 708 F.2d at 471. The hiatus order fails to meet this requirement, for the district court did not consider whether the residual effects of unlawful picketing could be dissipated by ordering the Unions to inform employees of neutral employers that the Unions no longer objected to their returning to work. See Potter, 482 F.2d at 841.
 
 
 25
 The general contractors argue that the court's failure to consider the less restrictive alternative was not error because the Unions did not raise the point below. We have no quarrel with the rule that we will not ordinarily entertain issues not raised before the district court; it is essential to a rational system of appeals. Yet this is not an instance where that rule applies. The Unions most certainly presented to the district court their argument that a "hiatus" injunction of otherwise lawful picketing would violate the first amendment. The normal first amendment imperative is that speech may not be enjoined. Claiborne Hardware Co., 458 U.S. at 909, 102 S.Ct. at 3424-25; Organization for a Better Austin v. Keefe, 402 U.S. 415, 419-20, 91 S.Ct. 1575, 1578-79, 29 L.Ed.2d 1 (1971). An exception for incidental restraints on speech is permitted only when no less restrictive alternative would accomplish the governmental purpose. Miller, 708 F.2d at 472 (quoting O'Brien, 391 U.S. at 377, 88 S.Ct. at 1679). It is the duty of those who attempt to enjoin speech to show that the situation falls within the exceptions to normal first amendment protection. Organization for a Better Austin, 402 U.S. at 419, 91 S.Ct. at 1578. The burden in the district court was therefore on the NLRB, not the Unions, to show that the "hiatus" injunction was the least restrictive means of remedying the residual effects of unlawful picketing. The NLRB's failure to meet this burden is therefore properly urged here as a necessary component of the Union's first amendment case.
 
 
 26
 The "hiatus" injunction impinges upon first amendment interests. It has not been established by specific findings that the injunction furthers the governmental interest in dissipating the effects of unlawful secondary activity, nor that it is the least restrictive means of accomplishing that goal. It therefore fails to meet the requirements established by Miller for such a restriction of protected expression and cannot stand.
 
 
 27
 REVERSED AND REMANDED.
 
 
 28
 CHOY, Senior Circuit Judge, dissenting in part:
 
 
 29
 The majority cannot uphold the district court's "hiatus" injunction for two reasons, neither of which I find persuasive. I conclude that the 10(l ) injunction was proper in light of this court's recent decision in Miller v. United Food & Commercial Workers Union, 708 F.2d 467 (9th Cir.1983). The Miller court held that "[i]n some cases a temporary ban on all picketing may be appropriate." Id. at 472. The court explained that a brief hiatus under section 10(l ) is appropriate "only when presumptively legitimate picketing would perpetuate the effects of prior illegal activity." Id. at 471. The court then observed that "[r]elief under these limited circumstances furthers the purpose of section 10(l ) to 'restore or preserve the status quo pending litigation,' ... while circumscribing a union's right to picket only to the extent made necessary by its impermissible conduct." Id. (quoting S.Rep. No. 105, 80th Cong., 1st Sess. 27); see also Baldovin v. International Alliance of Theatrical Stage Employees, 570 F.Supp. 1314, 1319 (S.D.Tex.1983).
 
 
 30
 In the instant case, the record indicates that the Unions' conduct demonstrated a propensity unlawfully to enmesh neutral subcontractors in the Unions' primary dispute. The majority nevertheless concludes that the district court made insufficient findings under Miller and therefore remands the case to the district court. I disagree that a remand is necessary under the facts of this case.
 
 
 31
 In its written order, the district court stated that the ten-day hiatus was necessary "in order to dissipate the residual effects of any prior unlawful picketing." Judge Irving noted at the injunction hearing that "[t]he NLRB by numerous affidavits and other evidence has demonstrated reasonable cause to believe the Respondents are engaging in unlawful secondary boycotts," and that "[s]uch illegal activity on behalf of the unions has been substantiated by petitioners' affidavits ..., demonstrating ongoing unfair labor practices." R.T. at 42.
 
 
 32
 The district court also stated that an order limiting picketing to only those gates legally picketed would "be ineffective as this is an obligation that [the Unions] have thus far been unable to meet," and concluded that "the broader restraint is justified, and without which the effects of prior illegal activities will be perpetuated." R.T. at 43. In light of these findings made at the injunction hearing, I would not remand this case to the district court for more specific findings. Although the district court might have set forth its findings with more particularity, I conclude that a remand here serves no practical purpose.
 
 
 33
 The majority today also reverses the hiatus order because the district court did not "carefully tailor its injunction in order to permit the maximum amount of legitimate activity while erasing the illegal ... conduct and its deleterious impact." See Miller v. United Food & Commercial Workers Union, 708 F.2d at 471. The majority concludes that the district court should have considered whether the residual effects of unlawful picketing could have been dissipated by ordering the Unions to inform employees of neutral employers that the Unions no longer objected to their returning to work. After a review of the record, I cannot say that the district court abused its discretion in failing to discover during a heated labor dispute this alternative injunctive remedy, when no party suggested it during the proceedings below.
 
 
 34
 Moreover, I find sufficient evidence in the record to conclude that the injunctive relief here was "cast in the least restrictive terms possible." Miller v. United Food & Commercial Workers Union, 708 F.2d at 472. First, the district court imposed the hiatus in primary picketing for only ten days. In contrast to Potter v. Houston Gulf Coast Building Trades Council, 482 F.2d 837 (5th Cir.1973), in which the Fifth Circuit vacated an order prohibiting primary picketing indefinitely, the duration of this hiatus order was relatively short. Moreover, in Potter, the dispute was between only two general contractors and one trade council. Id. at 839. Here, the dispute involved seven general contractors, three unions, and a trade council on twelve different jobsites. This dispute was widespread and included many instances of illegal secondary activity at all twelve jobsites, as evidenced by the affidavits found in the record. Under these circumstances, it was not unreasonable, and certainly not an abuse of discretion, for the district court to conclude that a ten-day hiatus was necessary to dissipate the residual effects of any prior unlawful picketing.
 
 
 35
 Second, the record indicates that the district court was aware of its responsibility to cast the hiatus order "in the least restrictive terms possible." At the July 14 hearing, the issue arose whether the hiatus order should be directed at all of the jobsites where the Unions and general contractors were involved or only at those jobsites where illegal activity had occurred, as alleged in the affidavits. The district court stated that it intended to limit the hiatus order only to the latter jobsites. R.T. at 7:44. The hiatus part of the July 14 order, in fact, specifically lists the twelve jobsites. Although intent is seldom dispositive, the record indicates that the district court made the proper considerations.
 
 
 36
 I also disagree with the majority's conclusion that we cannot consider whether the alternative injunctive relief was offered for the first time on appeal. In the instant case, none of the parties suggested, or even brought to the district court's attention, the alternative injunctive relief the majority now requires the district court to consider. I conclude that we should give some weight to this factor. See Ahmed v. American Steamship Mutual Protection & Indemnity Assoc., 640 F.2d 993, 996 (9th Cir.1981) (court ordinarily declines to consider issue not raised below), cert. denied, --- U.S. ----, 104 S.Ct. 98, 78 L.Ed.2d 103 (1983); Fed.R.Civ.P. 46 (party should make known to court at time of order action party desires court to take); accord In re Bildisco, 682 F.2d 72, 82 (3d Cir.1982) (no reversible error unless appellant properly identified error and requested trial court to take appropriate course of action), aff'd, --- U.S. ----, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 508 F.2d 547, 558 n. 17 (1st Cir.1974) (appellate court will not consider issue when no objection made to trial court's failure to make relevant inquiry), cert. denied, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975).
 
 
 37
 Under the majority's ruling, the party opposing an injunction may simply hypothesize on appeal a less restrictive injunction, which is relatively simple to do in an appellate proceeding that is far removed from a heated labor dispute. This court then can vacate the district court's order. I am concerned that the majority today makes it all too easy to overturn, or at least frustrate the implementation of, necessary injunctions.
 
 
 
 [1]
 The injunction order specifically listed the names of the twelve contractors and the names and addresses of the twelve construction sites
 
 
 [2]
 In addition, the NLRB's interpretation of the Weinstein test is taken out of context from language in the Supreme Court's Bellotti decision. Examining the particular facts of Bellotti, the Court observed, "Under no reasonably foreseeable circumstances could appellants obtain plenary review ...." 435 U.S. at 774, 98 S.Ct. at 1414. The Court merely made an observation; it did not suggest that this was a test to determine whether an action was moot. Moreover, in Bellotti, the appellants had 18 months to challenge in court a Massachusetts election law before the election was held. The Court found that 18 months "proved too short a period of time for appellants to obtain complete judicial review." Id. Here, the injunction lasted only ten days
 
 
 [3]
 The NLRB cites American Horse Protection Ass'n v. Watt, 679 F.2d 150 (9th Cir.1982) (per curiam), to support its position. This decision, however, is distinguishable. The district court's order in American Horse provided that the American Horse Protection Association was to be given notice of any proposed actions and "a reasonable opportunity to challenge" these actions. Id. at 151. As this court noted, the district court specifically provided for judicial review. In this case, however, the district court's injunction by its terms expired before the Unions could have a reasonable opportunity to challenge it in this court