Robert H. MILLER, Regional Director of Region 20 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CALIFORNIA PACIFIC MEDICAL CENTER, Respondent.

No. C 92–0804 BAC.

United States District Court, N.D. California.

March 27, 1992.

Veronica Clements, Alan D. Longman, Jonathan Seagle, N.L.R.B., Region 20, San Francisco, Cal., for petitioner.

Joseph E. Wiley, Gerald R. Lucey, Corbett & Kane, Emeryville, Cal., for respondent.

## MEMORANDUM AND ORDER

CAULFIELD, District Judge.

This matter came before the court upon the verified petition of Robert H. Miller, Regional Director of Region 20 of the National Labor Relations Board, herein called the Board, supported by affidavits, declarations, and exhibits, for a preliminary injunction pursuant to Section 10(j) of the National Labor Relations Act, as amended (29 U.S.C., § 160(j)), herein called the Act, pending final disposition of the matter now pending before the Board, and upon issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The court, having fully considered the pleading, affidavits, exhibits, briefs, and arguments of counsel, and the entire record in the case, holds that the requested injunction shall be issued.

## BACKGROUND

The facts of this case are not significantly in dispute. On June 16, 1991, Children's Hospital of San Francisco ("Children's") and Pacific Presbyterian Medical Center ("PPMC") were merged into a new entity, California Pacific Medical Center ("CPMC"). The merger agreement provided that PPMC would be merged into Children's and that the latter entity would be the surviving corporation. It further provided that, upon the merger, the articles of incorporation of Children's would be amended to change the name of the corporation to CPMC. Moreover, the agreement stated that, upon merger, the separate existence of PPMC would cease and that CPMC would succeed, "without other transfer, to all rights and property" of PPMC and be subject to all debts and liabilities of PPMC.

The new entity operates at the same locations in San Francisco as had PPMC and Children's. The hospital formerly known as Children's is referred to as the California Campus. The former cite of PPMC is designated the Pacific Campus.

Of the 1370 nurses employed at the combined facility, approximately 80 work at both facilities.

The nurses at the California Campus have retained essentially the same supervisors they had prior to the merger. After the merger, Penny Holland became the Vice–President of Nursing Services for Respondent. She is responsible for all nursing functions, including the planning and direction of patient care and overseeing all nursing services and surgical services. Prior to the merger, she held the same position at Children's.

The nurses working in the Emergency Room, the Labor and Delivery Unit, and other units at the California Campus were subject to the same immediate supervision as when they worked for Children's before the merger. These immediate supervisors possess authority with respect to hiring, discipline, scheduling of work, evaluation of employees, granting time off, and directing work.

### A. *Union Representation Prior to the Merger*

Prior to the merger, the 802 registered nurses at PPMC were not represented by a union. The 568 registered nurses employed at Children's were represented for purposes of collective bargaining, by California Nurses Association ("CNA"). CNA had represented the nurses at Children's since 1947. The most recent collective bargaining agreement between Children's and CNA was effective on its face from August 1, 1988 to May 31, 1991. Although there were negotiations for a new collective bargaining agreement between Children's and CNA prior to the merger, no agreement was reached on a new contract.

The registered nurses employed at Children's received different wages and benefits prior to the merger than the nurses at PPMC. Some of the nurses at Children's were compensated differently for hours worked in excess of eight than their counterparts at PPMC. The nurses at Children's were under a hospital-wide seniority system while the nurses at PPMC were

under a departmental seniority system. The two hospitals had different requirements applicable to registered nurses with respect to Advanced Cardiac Life Support (ACLS) certification, an extensive cardiac care training.

## B. *Respondent's Withdrawal of Recognition of CNA*

On July 11, 1990, Children's sent a letter to CNA informing them of the proposed merger. In response, CNA sought information concerning the nature of the merger. Specifically, CNA was concerned that the proposed merger "raised questions with respect to the bargaining relationship between CNA and Children's Hospital." For example, CNA sought information regarding the legal identity of the organizations involved (whether they are corporations, partnerships, non-profit associations, etc.). Additionally, CNA sought to find out the kind of transaction contemplated (i.e., a purchase or exchange of stock, a sale of assets, or other arrangements regarding ownership or control.) Children's refused to provide the requested information.

As would be imagined, during the months prior to the merger all interested parties made attempts to get their affairs in order. Toward that end, on January 18, 1991, Victoria J. Williams, R.N., Vice President, Nursing Services of PPMC, sent a letter to all nurses at PPMC which addressed the issue of union representation. The letter purported to provide the reader with the position of PPMC as an institution on the unionization of the professional nurses. The letter provides in pertinent part:

> The primary purpose of PPMC and its nursing staff is to provide quality health care to our community on an uninterrupted basis. Any organization which imposes even the threat of a walkout, slowdown, or strike is inconsistent with that mission. Additionally, the restrictions that may come about under an inflexible contract can interfere with your ability to practice your profession. Rigid controls over scheduling, assignments, accountability, input mechanisms, etc. can adversely affect a quality environment.

> We firmly believe that as long as we meet our commitment to our professional nursing staff, the presence of an outside organization (i.e. the CNA) is not in the best interest of our hospital, our patients, and most of all—our employees.

On March 1, 1991, Children's informed CNA that it was terminating the collective bargaining agreement then in place on June 1, 1991. The collective bargaining agreement had expired and the notice of termination was in accordance with the terms of the agreement. The letter also sought information concerning future negotiations between Children's and CNA. (Individuals who would represent CNA, topics to be discussed, and the time and location of the negotiations.)

On June 16, 1991, the date of the merger, the new entity, CPMC, notified CNA by letter that it would no longer recognize CNA as the bargaining agent for the nurses. The stated basis for withdrawing recognition is that CNA no longer represented a majority of the nurses at the combined facility. The letter did invite CNA to join CPMC in requesting the National Relation's Board to conduct a secret ballot election of all registered staff nurses.

On the same day of the merger, respondent sent notices to all the registered nurses who had been employed by Children's announcing changes in their wage rates, pension plan, and paid time off program. CNA was not afforded the opportunity to bargain concerning these changes and Respondent's subsequent changes.

After the merger, Respondent also implemented changes in the hours of work which were compensable at overtime rates, paid holidays and disciplinary procedures.

Since the merger, Respondent has centralized many of the managerial and administrative functions of the combined two former hospitals. For example, the employees on both campuses of the CPMC use the same employee handbook which contains the personnel rules and procedures applicable to all employees of Respondent, including the registered nurses. Additionally, Respondent centralized responsibility for

all labor relations and human resources functions at both campuses under a Vice President of Human Resources. Respondent also established the same wage scales and job classifications for the nurses on the two campuses. Common payroll systems and job posting procedures have also been established for the two campuses.

On January 1, 1992, Respondent implemented a new health plan which changed the benefits available to employees and increased employee costs. Respondent also established the same seniority policy and uniform disciplinary and problem resolution procedures for the registered nurses at the two campuses.

The parties are in agreement that Respondent has provided opportunities for orientation concerning the Pacific Campus to nurses working at the California Campus and vice versa. As of July 17, 1991, these opportunities have been provided to nurses on a voluntary basis.

## DISCUSSION

### A. *Standard for Issuing Injunction*

It is well settled that Section 10(j) was enacted to provide injunctive relief during the period of time in which a matter is pending before the Board. *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 747 (9th Cir.1988). It is not unusual for a matter to remain pending before the Board for several months. Accordingly, Section 10(j) was enacted to enable the Board to seek injunctive relief to preserve or to restore the status quo pending the Board's final determination. *Id.*

Under Ninth Circuit authority, the district court's "inquiry into the validity of the Board's unfair labor practice charge is confined to determining whether the factual allegations are not insubstantial and frivolous." *Kennedy v. Los Angeles Typographical Union No. 174*, 418 F.2d 6, 8 (9th Cir.1969), as cited in *Aguayo, supra* at 747. Second, whether the requested injunctive relief is "just and proper". *Id.*[1]

### 1. Reasonable Cause

■ The burden to establish reasonable cause is minimal. *Aguayo v. Tomco Carburetor Co.*, 853 F.2d at 748. The court need only find that the allegations contained in the Board's petition are not "insubstantial and frivolous." *Kennedy*, 418 F.2d at 8. "The statutory standard of 'reasonable cause' is satisfied if there is a showing of factual issues which must be resolved by the Board." *Scott for and on Behalf of N.L.R.B. v. El Farra Enter*, 863 F.2d 670, 673 (9th Cir.1988).

■ Petitioner argues that there is reasonable cause to believe Respondent is simply a renamed corporation and is the "continuing existence" of Children's. In the alternative, petitioner argues that Respondent is at least a legal successor to Children's because the "employing enterprise" remains unchanged and Respondent made it clear at the outset that it would retain all the former Children's registered nurses. *N.L.R.B. v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61, 80 L.R.R.M. (BNA) 2225.[2] Under either theory, petitioner asserts that Respondent's actions in withdrawing recognition of the union and making unilateral changes in the nurses conditions of employment are a violation of section 10(j).

For purposes of this petition, the court holds that Respondent is a renamed corporation and is the "continuing existence" of Children's. The merger agreement entered

---

1. Respondent argues that the traditional injunctive standard should be applied to section 10(j) cases. Specifically, Respondent argues that the Board's petition should not issue because petitioner has failed to show irreparable harm and likely success on the merits. While some circuits have applied traditional injunctive relief standards to section 10(j) cases, *see Kinney v. Pioneer Press*, 881 F.2d 485 (7th Cir.1989), the Ninth Circuit has not done so.

2. The successorship doctrine is not applicable to the merger involved here. It has been held that the doctrine is limited to those situations in which the predecessor and successor are unrelated entities and the new employer does not assume the obligations of the predecessor employer. *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 750 (7th Cir.1989). Here, Children's and CPMC are essentially the same entity. Moreover, CPMC assumed the liabilities of both Children's and PPMC.

into between the two entities specifically provided that PPMC would be merged into Children's and that the latter would be the surviving corporation. Additionally, the separate existence of PPMC ceased and Children's, renamed CPMC, succeed to all rights, property, debts, and liabilities of PPMC.

With respect to the nursing units in particular, there is ample evidence that the two existing entities have continued as separate units. Respondent has instituted some uniform policies with respect to wages, leave, pension, health care and seniority provisions and integrated some administrative functions. However, the vast majority of the nurses continue to work in their former positions in the separate facilities. Moreover, the nurses working in most of the departments at the Children's campus are subject to the same immediate supervisors as when they worked for Children's before the merger. These immediate supervisors possess authority with respect to hiring, discipline, scheduling of work, evaluation of employees, granting time off, and directing work.[3]

In light of all of the above, the court finds that the creation of Respondent was analogous to a stock transfer in which the original corporate employer of the CNA nurses continues in existence.[4] Accordingly, there is reasonable cause to believe that the changes instituted by Respondent were insufficient to affect the California Campus registered nurses employee attitudes towards union representation, and that the registered nurse unit at the California campus remains an appropriate unit. Therefore, Respondent has an obligation to continue to recognize and bargain with CNA.

## 2. Just and Proper

■ Until recently, the Ninth Circuit had not delineated a definitive standard for the

"just and proper" prong of the section 10(j) analysis. In *Scott v. N.L.R.B.*, the court held that the "just and proper" element is met by a showing that the "relief is necessary to prevent a frustration of the remedial purposes of the Act." 863 F.2d at 674.

Respondents unilaterally withdrew recognition of CNA. During oral arguments, the parties' estimates for the length of time this matter will remain pending ranged from one to two years. Prior to the merger there were 548 registered nurses at Children's who were CNA members. As of December 31, 1991, 312 nurses ceased to be members of CNA. If an injunction were not issued, after 45 years of representing the nurses at Children's CNA would cease to exist at the California campus.

Reinstatement of recognition of CNA is just and proper under these circumstances. Section 10(j) codifies the strong public interest in maintaining the integrity of the collective bargaining process. *Brown v. Pacific Telephone and Telegraph Co.*, 218 F.2d 542, 544 (9th Cir.1954). Reinstatement of CNA would serve that purpose by returning to the status quo of the California campus prior to the merger.

Respondent argues that Petitioner has failed to show any animus against CNA; accordingly, absent union animus, the requested injunction would be improper. In support of this argument Respondent notes that it not only continued to recognize other unions which represented a majority of the workers in the combined hospital, but also attempted to obtain a secret ballot election of the nurses to determine if a majority wished to be represented by CNA.

First, the court disagrees that there has been no proof of union animus. While Respondent did recognize other unions, Petitioner presented significant evidence of animus between CPMC and CNA. Specifically, months prior to the merger, officials at PPMC embarked on a campaign to dis-

---

**3.** While it is true that Respondent does allow nurses to participate in a float pool on a voluntary basis; to date, only 80 nurses have participated in the voluntary float pool.

**4.** A stock transfer involves no break or hiatus between two legal entities, but is rather, the continuing existence of a legal entity; *Esmark*

*Inc. v. N.L.R.B.*, 887 F.2d 739, 751, 132 L.R.R.M. 2710 (7th Cir.1989). (quoting *TRB International Corp. v. The Hendricks Miller Typographic Co.*, 240 N.L.R.B. 1082, 1083 n. 4 (1979); *Morro Inc. d/b/a Town Plaza Hotel*, 258 N.L.R.B. 69, 76 (1981); *Phil Wall & Sons Distributing*, 278 N.L.R.B. 1161, 1165 (1988)).

courage the PPMC nurses from choosing CNA representation. In light of the fact that a sizable majority of the nurses at the combined hospital are PPMC nurses, Respondent's attempts to secure an election after months of behind the scenes maneuvering offered little chance of a fair election.

Second, Respondent cites no authority which mandates a finding of animus. *Eisenberg v. Lenape Products, Inc.*, 781 F.2d 999 (3rd Cir.1986), the case relied upon by Respondent, found interim relief inappropriate where there was not only no proof of union animus, but also, where there was no proof that the employer was even aware of the employees "embryonic" efforts to unionize. *Id.* at 1005.

More important, the standard set by the court of appeals strongly suggests that a finding of animus is unnecessary. The court need not find that an unfair labor practice has occurred. *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076 (3rd Cir.1984). All the court need find is that the Board's petition is substantial and not frivolous. *Aguayo, supra* at 747. This standard must be read in conjunction with the public policy behind section 10(j) to maintain the integrity of the bargaining process. So long as the Board's petition is a reasonable and a just and proper means of ensuring the integrity of the collective bargaining process, a showing of union animus is not required.

### ORDER

1. Petitioner's request for an Injunction under section 10(j) is hereby GRANTED.

2. Respondent is hereby Ordered to recognize CNA as the collective bargaining representative for the nurses at the CPMC's California campus. This Injunction shall remain in effect pending final determination of the N.L.R.B. in the action currently pending before the Board.

3. Respondent is to restore the nurses at the California campus to their pre-June 16, 1991 status quo.