19 F.3d 449
 145 L.R.R.M. (BNA) 2769, 62 USLW 2591,
128 Lab.Cas. P 11,104
 Robert H. MILLER, Regional Director of Region 20 of the
National Labor Relations Board, for and on Behalf
of the NATIONAL LABOR RELATIONS BOARD,
Petitioner-Appellant/Cross-Appellee,
v.
CALIFORNIA PACIFIC MEDICAL CENTER,
Respondent-Appellee/Cross-Appellant.
 Nos. 92-15721, 92-15746.
 United States Court of Appeals,
Ninth Circuit.
 Argued Oct. 14, 1993.
Submission Deferred Oct. 14, 1993.
Submitted Oct. 28, 1993.
Decided March 21, 1994.
 
 Appeal from the United States District Court for the Northern District of California, Barbara A. Caulfield, District Judge, Presiding.
 Ellen A. Farrell, Assistant General Counsel, National Labor Relations Board, Washington, DC, for the petitioner-appellant/cross-appellee.
 Jerome B. Falk, Jr., Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, California, for the respondent-appellee/cross-appellant.
 Before: WALLACE, Chief Judge, BROWNING, TANG, SCHROEDER, D.W. NELSON, HALL, WIGGINS, BRUNETTI, THOMPSON, TROTT, and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 To return nurses who worked at Children's Hospital of San Francisco to the collective bargaining status they had before Children's and Pacific Presbyterian Medical Center were merged into a single health care provider, California Pacific Medical Center (CPMC), the Regional Director of the National Labor Relations Board sought a preliminary injunction under Sec. 10(j) of the National Labor Relations Act, 29 U.S.C. Sec. 160(j), pending disposition of an unfair labor practice charge by the NLRB. Section 10(j) permits the Board to petition any United States district court for an appropriate restraining order and confers jurisdiction on the court to grant such temporary relief "as it deems just and proper."
 
 
 2
 Applying our circuit's two-part standard for Sec. 10(j) relief--determining first whether the factual allegations supporting the Board's petition are not insubstantial and frivolous, such that there is "reasonable cause" to believe the employer has violated the NLRA, and second, whether the requested relief is necessary to prevent a frustration of the remedial purposes of the Act and is thus "just and proper," Scott ex rel. NLRB v. El Farra Enters., Inc., 863 F.2d 670, 673-74 (9th Cir.1988); Aguayo ex rel. NLRB v. Tomco Carburetor Co., 853 F.2d 744, 747 (9th Cir.1988), the district court granted the Board's request for injunctive relief in a published opinion. Miller ex rel. NLRB v. California Pac. Medical Ctr., 788 F.Supp. 1112 (N.D.Cal.1992). The district court rejected, as incompatible with Ninth Circuit law, CPMC's argument that an injunction should issue only after a finding of irreparable harm and likely success on the merits. Id. at 1115 n. 1. On appeal, a panel of this court reversed, distinguishing El Farra and Tomco on their facts and holding that, whereas the "reasonable cause" prong goes to the maturity of the Board's proof and requires the district court to assess whether there has been a sufficient investigation into the circumstances requiring injunctive relief, the "just and proper" inquiry invokes traditional equitable criteria. Miller ex rel. NLRB v. California Pac. Medical Ctr., 991 F.2d 536 (9th Cir.1993).
 
 
 3
 We took this case en banc to clarify the standards to be applied in reviewing Sec. 10(j) petitions. We conclude that the "reasonable cause" inquiry has no place in Sec. 10(j) analysis, and that in deciding whether the Board's requested relief is "just and proper," district courts should consider traditional equitable principles, bearing in mind that the underlying purposes of Sec. 10(j) are to protect the integrity of the collective bargaining process and to preserve the NLRB's remedial power while the Board resolves an unfair labor practice charge.
 
 
 4
 * For more than 45 years, California Nurses Association (CNA) has represented nurses at Children's. In July 1990, Children's and Pacific Presbyterian Medical Center (PPMC), a nearby hospital, decided to merge into a single health care provider, California Pacific Medical Center. The merger agreement provided that PPMC would be merged into Children's, that Children's would be the surviving corporation, that it would change its name to CPMC, and that CPMC would succeed to the rights and property (and assume the debts and liabilities) of PPMC. The merger was effective June 16, 1991.
 
 
 5
 CPMC advised six of the seven unions that had represented employees at Children's and PPMC that CPMC intended to recognize those unions' status as the collective representatives of covered employees and to honor its obligations under those contracts. The lone exception was CNA.
 
 
 6
 CNA had been the bargaining representative for the Children's nurses since 1947. At the time of the merger, it represented 568 registered nurses at Children's; PPMC's 802 registered nurses were not represented by any union.
 
 
 7
 On March 1, 1991, in accordance with the terms of the collective bargaining agreement, Children's notified CNA that it was terminating the agreement as of its expiration on June 1, 1991. On the date of the merger (June 16), CPMC notified CNA that it would no longer recognize the union as the bargaining agent for nurses of the new entity because CNA did not represent a majority of nurses at the combined facility. CPMC invited CNA to join in a request to the NLRB for a secret-ballot election of all registered staff nurses. CNA declined, and instead filed an unfair labor practice charge with the Board.
 
 
 8
 Since the merger, CPMC has centralized managerial and administrative functions. Labor relations and human relations are centralized under a single Vice President for Human Resources. Both campuses, as the former Children's facility (California Campus) and PPMC (Pacific Campus) are now called, use a common payroll system and follow identical job-posting procedures. For the most part, nurses on the two campuses are on the same wage scale, resulting in an increase in wages for the nurses at the California Campus.
 
 
 9
 Eight months after CNA filed the unfair labor practice charge, the Regional Director, acting at the Board's direction, petitioned the district court for a preliminary injunction under Sec. 10(j). The district court found that the Board had shown "reasonable cause" inasmuch as the Board's allegations that CPMC was little more than the "continuing existence" of Children's and therefore had an obligation to bargain in good faith with CNA were not insubstantial and frivolous. It also determined that restoration of the pre-merger status quo was necessary to prevent a frustration of the remedial purposes of the NLRA and therefore was "just and proper" given CPMC's unilateral withdrawal of CNA's recognition, the length of time the unfair labor charge would be pending, and the fact that if an injunction were not issued, CNA would cease to exist at the California Campus after 45 years of representing nurses at Children's. The district court accordingly directed CPMC to recognize CNA as the collective bargaining representative for nurses at the California Campus and to restore those nurses' terms and conditions of employment to their pre-merger status quo.
 
 
 10
 On April 15, 1992, the district court denied the Board's request to modify the preliminary injunction so as to make the restoration order contingent upon CNA's request. Both sides appealed.
 
 
 11
 On May 6, 1992, we granted CPMC's motion for a stay pending appeal insofar as the preliminary injunction required a rollback of the California Campus nurses' terms and conditions of employment to the pre-merger status quo. However, we left standing that part of the order requiring CPMC to recognize and bargain with CNA.
 
 
 12
 The appeals were briefed on an expedited schedule and the case was argued before the panel on August 19, 1992. The panel's opinion was filed on April 13, 1993. On August 27, 1993, the full court granted the Board's Petition for Rehearing En Banc and set argument for October 14. The Board issued its final decision on the merits of the underlying unfair labor practices charge on September 30, 1993.
 
 
 13
 In light of this development, we asked for supplemental briefing on the issue of mootness. Both sides complied, though they did not disagree at argument that the controversy was capable of repetition, yet evading review, and thus was not moot for purposes of jurisdiction. The court appreciates this extra assistance by counsel.
 
 II
 
 14
 We have previously held that resolution of a Sec. 10(j) injunction proceeding is rendered moot by the NLRB's decision on the merits of an unfair labor practice complaint. Johansen ex rel. NLRB v. Queen Mary Restaurant Corp., 522 F.2d 6, 7 (9th Cir.1975) (per curiam). Just as both sides in Johansen agreed that the matter raised in that case was moot, both sides in this case agree that the issue raised in CPMC's appeal falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. This appeal differs from Johansen in that it involves the propriety of the standard applied by district courts in Sec. 10(j) proceedings. Therefore, while a Sec. 10(j) injunction exists only so long as the charges are pending (and we therefore have no call to revisit Johansen on this account), we are presented with an important legal issue that we are persuaded will continue to come up, and escape review, unless we provide it in this case.[1]
 
 
 15
 For such circumstances the Supreme Court has recognized a "capable of repetition, yet evading review" exception to the mootness doctrine. In Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam), the Court summarized the doctrine and set forth two requirements:
 
 
 16
 [T]he "capable of repetition, yet evading review" doctrine [is] limited to the situation where two elements combine[ ]: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.
 
 
 17
 Id. at 149, 96 S.Ct. at 349.
 
 
 18
 There is no question that a Sec. 10(j) injunction meets the first criterion. "Evading review" means evading Supreme Court review. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 547, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976) ("[I]f we decline to address the issues in this case on grounds of mootness, the dispute will evade review, or at least considered plenary review in this Court[.]"). The progress of this case illustrates that it may be difficult for a court of appeals--much less the Supreme Court--to reach a final decision on the propriety of a Sec. 10(j) injunction before the Board's adjudication is finished. The Board took nearly 28 months to resolve CNA's unfair labor practice charge; almost 20 of those overlapped with the injunction proceedings from the filing of the petition in the district court to the eve of oral argument before the en banc court. Even if the Board hadn't filed a suggestion for rehearing en banc, but had immediately petitioned for certiorari, the Supreme Court could not have received briefing, heard argument, and rendered an opinion before the Board issued its decision. See First Nat'l Bank v. Bellotti, 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978) (18 months too short for "complete judicial review"). Plenary Supreme Court review of most cases in the federal system necessarily includes plenary review in a court of appeals. Review in a court of appeals, in turn, necessarily includes the prospect of rehearing en banc. See Fed.R.App.P. 35. In these circumstances, where the underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration, the controversy evades review. See Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F.2d 365, 369-70 (D.C.Cir.1992) (where District refused Klan's request for a march permit, but march occurred more than 14 months prior to argument in court of appeals, case fell within exception: "[M]erits ... cannot be expected to receive considered, plenary review even in this court, much less the Supreme Court, prior to events overtaking the litigation.") (quotation marks omitted).
 
 
 19
 Likewise, there is a reasonable expectation that this dispute will recur. The complaining party "need only show that it is reasonable to expect that [it] will engage in conduct that will once again give rise to the assertedly moot dispute; [it] need not show that there is a 'demonstrated probability' that the dispute will recur." Barilla v. Ervin, 886 F.2d 1514, 1520 (9th Cir.1989) (discussing Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)).
 
 
 20
 We have no need to decide whether CPMC or the Board is the "complaining party"[2] because both meet this threshold here. As CPMC is a large employer that currently deals with five other unions in addition to CNA and is still in the process of restructuring, there is a reasonable expectation that another labor dispute will arise and the Board may again seek Sec. 10(j) relief against it. See, e.g., Burlington N.R.R. v. Brotherhood of Maintenance of Way Employes, 481 U.S. 429, 436 n. 4, 107 S.Ct. 1841, 1846 n. 4, 95 L.Ed.2d 381 (1987) (exception applicable to labor dispute that Congress had resolved through legislation: "Because [the] same parties are reasonably likely to find themselves again in dispute over the issues raised in [the petition for certiorari], and because such disputes typically are resolved quickly by executive or legislative action, this controversy is one that is capable of repetition yet evading review."); Brock v. Roadway Express, Inc., 481 U.S. 252, 258, 107 S.Ct. 1740, 1745, 95 L.Ed.2d 239 (1987) (plurality opinion) (exception applicable to merits of due process challenge to Secretary of Labor's procedures for temporarily reinstating discharged employees pursuant to Surface Transportation Assistance Act of 1982 given that it could reasonably be expected that employer, one of country's largest interstate trucking companies, would be subject to similar reinstatement orders in future).
 
 
 21
 By the same token, it is certain the Board will continue to litigate Sec. 10(j) injunctions in district courts throughout the circuit. The same issue, arising from confusion over the appropriate standard to be applied in Sec. 10(j) proceedings, will recur in future litigation. It is important for the Board and for employers such as CPMC to know what criteria will be applied when the Board requests interim relief under Sec. 10(j). Thus, the public interest weighs heavily in favor of our resolving this appeal. See Greenpeace Action v. Franklin, 982 F.2d 1342, 1348 (9th Cir.1992).
 
 
 22
 We conclude that the Board's issuance of its final order does not render this appeal moot. The dispute over standards is within the "capable of repetition, yet evading review" exception to the case-and-controversy requirement. We therefore consider what standards the district court should apply in Sec. 10(j) requests.III
 
 
 23
 The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Senate of Cal. v. Mosbacher, 968 F.2d 974, 975 (9th Cir.1992); see also Tomco, 853 F.2d at 748 ("We review the 'just and proper' prong of the section 10(j) analysis for abuse of discretion."). "Where the district court is alleged to have relied on erroneous legal premises, review is plenary." America W. Airlines, Inc. v. National Mediation Bd., 986 F.2d 1252, 1258 (9th Cir.1992). We review de novo issues of law underlying the district court's preliminary injunction. MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 516 (9th Cir.1993), cert. dismissed, --- U.S. ----, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994).
 
 IV
 
 24
 Section 10(j) is unusual in federal labor law insofar as it authorizes the federal courts to grant injunctive relief in labor disputes. The broad anti-injunction provisions of the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C. Secs. 101-115, precluded federal courts from enjoining labor union activities while charges were pending before the Board. In 1947, however, Congress passed the Taft-Hartley Act, Pub.L. No. 80-101, 61 Stat. 136, in part to alleviate the threat that delay in the Board's processing of unfair labor practice complaints would otherwise pose to the NLRA's remedial goals.[3] Taft-Hartley added Sec. 10(j) to the NLRA. It provides:
 
 
 25
 The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.
 
 
 26
 29 U.S.C. Sec. 160(j). Taft-Hartley also added Sec. 10(l ), which is a related but more limited provision that requires the Board to seek interim relief when it has "reasonable cause" to believe that specific violations of the NLRA (such as secondary boycotts and certain types of illegal picketing) have occurred, and correspondingly confers jurisdiction on the district courts to grant injunctive relief as the court deems "just and proper." Id. Sec. 160(l ).
 
 
 27
 The district court applied the standard that has evolved in this circuit for determining whether Sec. 10(j) injunctive relief is available. It is a two-part inquiry:
 
 
 28
 First, the court must determine whether there is reasonable cause to believe that an unfair labor practice occurred. The district court's inquiry into the validity of the Board's unfair labor practice charge is confined to determining whether the factual allegations are not insubstantial and frivolous. Second, the court must determine whether the interim injunctive relief the Board seeks is just and proper.
 
 
 29
 Tomco, 853 F.2d at 747 (citations, footnote, and quotation marks omitted). While we have never explicitly defined the "just and proper" element, our decisions in Tomco and El Farra indicate that this standard is met when the relief requested is "necessary to prevent a frustration of the remedial purposes of the Act." El Farra, 863 F.2d at 674.
 
 
 30
 CPMC argues that the "just and proper" standard incorporates the traditional equitable criteria used in determining whether to grant a preliminary injunction. Traditionally we consider (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief. United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174 (9th Cir.1987). The moving party must show "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits." Mosbacher, 968 F.2d at 977. "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Odessa Union, 833 F.2d at 174.
 
 
 31
 The Board contends that district courts should limit their scrutiny of the merits of the violation to whether the Regional Director's factual allegations and legal theories are substantial and not frivolous, and that the "just and proper" prong should focus on whether the nature and effect of the alleged violations threatens remedial failure. It argues that the "reasonable cause" and "just and proper" inquiries parallel traditional equitable concepts, but properly restrict the court's power to weigh the equities in keeping with the statutory purpose and structure.
 
 
 32
 We conclude that while the Board is correctly concerned with protecting the integrity of the collective bargaining process and with preserving its remedial powers in the wake of an alleged violation of the NLRA, the "reasonable cause"/"just and proper" standard it advocates does not comport with the language of Sec. 10(j), or with Supreme Court precedent which requires balancing competing claims of injury and the effect on each party of granting and withholding injunctive relief. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Rather, we believe the Board's concerns can more appropriately be accommodated by factoring the purpose of interim relief and preservation of the Board's remedial power into the traditional framework that informs our equity jurisdiction.
 
 
 33
 * Section 10(j) has no "reasonable cause" component. It was imported into Sec. 10(j) analysis from Sec. 10(l ), where the requirement expressly appears, when Tomco adopted the "reasonable cause" prong of its Sec. 10(j) test from San Francisco-Oakland Newspaper Guild v. Kennedy ex rel. NLRB, 412 F.2d 541, 544 (9th Cir.1969), a Sec. 10(l ) case. See Tomco, 853 F.2d at 747. Section 10(l ), unlike Sec. 10(j), is mandatory in nature: Whenever the Board develops "reasonable cause" to believe that any one of the specified types of labor violations has occurred, it must petition the district court "for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter." 29 U.S.C. Sec. 160(l ). Even so, in Sec. 10(l ), the "reasonable cause" requirement has to do with the Board's own obligations under the Act--not with a constraint on the equitable powers of the district court once its jurisdiction has been properly invoked.
 
 
 34
 Section 10(j), by contrast, is discretionary; it provides that "the Board shall have power" to petition the district court for relief, but it does not say that the Board must do so. Unlike Sec. 10(l ), it erects no hurdle for the Board to jump over before petitioning the court for interim relief. As Congress prescribed a "reasonable cause" prerequisite for requesting Sec. 10(l ) relief, it knew how to impose that kind of requirement when it wanted to. Having not done so in Sec. 10(j), we should not assume that it meant the two provisions to be treated similarly. In any case, the level of belief required to proceed to court cannot equate with the level of proof required to succeed in court; otherwise the court would have no discretion to exercise. That, in turn, would conflict with the plain meaning of the statutory conferral of jurisdiction to grant injunctive relief which the court deems "just and proper." Finally, to require that "reasonable cause" be shown is confusing, casting focus on the preliminary investigation instead of on the likely success of the complaint on the merits, where, as we shall explain, it properly belongs.
 
 
 35
 In this view we join our colleagues on the Seventh Circuit, who recently abandoned the "reasonable cause" requirement in Sec. 10(j) proceedings. As Judge Easterbrook wrote for the court in Kinney v. Pioneer Press, 881 F.2d 485 (7th Cir.1989):
 
 
 36
 When courts apply traditional equitable principles to inquire whether an injunction is "just and proper" under Sec. 10(j), no further purpose is served by asking the district judge, as a preliminary matter, to determine whether the Director has established reasonable cause. To the extent it is important, the inquiry is part of the analysis of whether injunctive relief is just and proper; if it doesn't fit into that analysis, it needn't be answered.... If the [Board's] legal theory is inapt or if the facts are stacked against the agency's position (i.e., if there is truly no reasonable cause to believe someone has breached the NLRA), it's a safe bet that injunctive relief is not "just and proper". In fact, the district judge would be required to deny relief under such circumstances, because an injunction may not issue unless the plaintiff has at least a modest chance of success on the merits. Because the district judge must consider the strength of the Director's case in order to make this decision, nothing is gained by engrafting onto Sec. 10(j) proceedings a preliminary "reasonable cause" test.
 
 
 37
 Id. at 491 (citations omitted).
 
 
 38
 We therefore overrule Tomco and El Farra on this point, and hold that a district court, when presented with a Sec. 10(j) petition, need not determine whether there is reasonable cause to believe that an unfair labor practice has been committed. The district court must instead determine only whether the relief requested is "just and proper."
 
 B
 
 39
 Relying on El Farra, the Board argues that the "just and proper" element is satisfied if the "relief [is] necessary to prevent a frustration of the remedial purposes of the Act." 863 F.2d at 674. The Supreme Court, however, instructed differently in Romero, 456 U.S. 305, 102 S.Ct. 1798.
 
 
 40
 In Romero, the court of appeals had directed entry of an injunction to restrain the Navy's discharging pollutants without a permit in violation of the Federal Water Pollution Control Act, concluding that the traditional equitable balancing of competing interests was not required where there was a statutory duty to obtain a permit. The Court reversed, noting that by its nature, an injunction is an equitable remedy that does not issue as of course. Rather, "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies[,]" and where there are competing claims of injury, "the traditional function of equity has been to arrive at a nice adjustment and reconciliation between the competing claims[.]" Id. at 312, 102 S.Ct. at 1803 (quotation marks omitted). Even though it is important to consider the public interest, Romero states, "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." Id. at 313, 102 S.Ct. at 1803; see also Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987) ("In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."). Quoting its earlier opinion in Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591-592, 88 L.Ed. 754 (1944), the Court emphasized:
 
 
 41
 These commonplace considerations applicable to cases in which injunctions are sought in the federal courts reflect a "practice with a background of several hundred years of history," a practice of which Congress is assuredly well aware. Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles.
 
 
 42
 Romero, 456 U.S. at 313, 102 S.Ct. at 1803 (citation omitted). Accordingly, " '[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.' " Id. (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946)).
 
 
 43
 Section 10(j) does not state "in so many words" that district courts should ignore traditional equitable criteria when evaluating petitions for interim relief. Indeed, "just and proper" is another way of saying "appropriate" or "equitable." See Webster's Third New International Dictionary 1228 (1981) (defining "just" as "equitable"); id. at 1817 (defining "proper" as "marked by suitability, fitness, accord, compatibility"). Nor does the legislative history suggest that Congress intended to do away with the established equitable principles. Judge Friendly's analysis in Danielson v. Joint Bd. of Coat, Suit & Allied Garment Workers' Union, 494 F.2d 1230, 1241-42 (2d Cir.1974), lays this to rest. We are thus left to consider whether anything in the structure of the Act necessarily implies that conventional equitable discretion should not be exercised.
 
 
 44
 The Board infers the requisite intent to restrict the court's jurisdiction in equity from the high level of deference the NLRA accords generally to the Board's decisions, and the congressional policy favoring interim relief when the NLRA's underlying purposes are threatened. It argues that Sec. 10(j) and Sec. 10(l ) are part of an overall statutory scheme that allows for limited involvement by the federal courts in the investigation and disposition of unfair labor practice charges. The Board points out that, with the exception of these two provisions, the district courts lack jurisdiction over unfair labor practice complaints. Further, it notes that although the courts of appeals review the Board's decisions, the scope of their review is limited and deferential. See 29 U.S.C. Sec. 160(e)-(f); see also Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964) ("The Board's [remedial] order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.") (quotation marks omitted); NLRB v. Truck Drivers Local Union No. 449, 353 U.S. 87, 96, 77 S.Ct. 643, 648, 1 L.Ed.2d 676 (1957) ("The function of striking [an appropriate] balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the [NLRB], subject to limited judicial review."). Finally, the Board submits that while the equities can no doubt be considered, Congress has done so and has itself struck the balance such that the only remaining factor for the courts to consider is whether denial of interim relief will jeopardize the grant of ultimate relief.
 
 
 45
 We are not persuaded. Even though Sec. 10(j) is an exception to the primary jurisdiction of the NLRB over labor disputes, it reflects an intention that the district court will exercise judgment rather than simply sign off on Board requests. Otherwise, jurisdiction for the court to grant such relief "as it deems just and proper" would be unnecessary. Also, it is the courts of appeals which are obliged to afford deferential review to final Board determinations, not the district courts in response to preliminary requests. The NLRA provisions requiring deference to the NLRB show that when Congress wanted to tell the courts to give the benefit of the doubt to the Board's expertise, it knew how to do so. See 29 U.S.C. Sec. 160(e) (on petition for enforcement of its order, Board's factual findings deemed "conclusive" "if supported by substantial evidence on the record considered as a whole"); id. Sec. 160(f) (same rule with respect to petition for review of Board's order). As we discuss, district courts should take the appellate standard of review into account in evaluating the likelihood of success on the merits, but nothing in the NLRA requires them to defer to the Board's Sec. 10(j) request.
 
 
 46
 The Board relies on our opinion in Odessa Union, 833 F.2d 172, to contend that the "just and proper" inquiry centers on the threat of failing to grant interim relief, rather than the likelihood that an unfair labor practice has occurred. In Odessa Union, we said that "the fact that a federal statute is being enforced by the agency charged with that duty may alter the burden of proof of a particular element necessary to obtain injunctive relief." Id. at 175. There, the traditional requirement of irreparable injury was inapplicable because the parties conceded that the federal statute involved was violated. However, when the violation is disputed (as it is here), Odessa Union does not relieve the governmental agency of its burden of showing that the statutory conditions are met. See id. Rather, as we recently indicated in United States v. Nutri-Cology, Inc., 982 F.2d 394 (9th Cir.1992), the strength of the government's showing on the likelihood of prevailing on the merits will affect the degree to which it must prove irreparable injury:
 
 
 47
 In statutory enforcement cases where the government has met the "probability of success" prong of the preliminary injunction test, we presume it has met the "possibility of irreparable injury" prong because the passage of the statute is itself an implied finding by Congress that violations will harm the public. Therefore, further inquiry into irreparable injury is unnecessary. However, in statutory enforcement cases where the government can make only a "colorable evidentiary showing" of a violation, the court must consider the possibility of irreparable injury.
 
 
 48
 Id. at 398 (citations omitted). This is in keeping with our normal sliding scale standard of injunctive relief. There is, accordingly, no basis in our statutory enforcement cases for concluding that the Board need not make any showing of likelihood of success.
 
 
 49
 Recognizing that traditional equitable criteria apply to Sec. 10(j) proceedings brings us in line with the First, Second, and Seventh Circuits, which read Hecht and Romero as we do. See Pioneer Press, 881 F.2d at 490-91; Maram ex rel. NLRB v. Universidad Interamericana de Puerto Rico, Inc., 722 F.2d 953, 958 (1st Cir.1983); Kaynard ex rel. NLRB v. Mego Corp., 633 F.2d 1026, 1033 (2d Cir.1980) (Friendly, J.).[4] Incorporating conventional principles also comports with the approach we've taken in other statutory injunction cases. See Regents of the Univ. of Cal. v. American Broadcasting Cos., 747 F.2d 511, 515 (9th Cir.1984) (Sherman Act Sec. 1); FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1111 (9th Cir.1982) (Federal Trade Commission Act).
 
 
 50
 We therefore hold that in determining whether interim relief under Sec. 10(j) is "just and proper," district courts should consider traditional equitable criteria. They must do so, however, through the prism of the underlying purpose of Sec. 10(j), which is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charge.
 
 C
 
 51
 We turn, then, to how courts should approach the balancing of equities in Sec. 10(j) requests.
 
 
 52
 First, as Romero indicates, the public interest is an important factor in the exercise of equitable discretion. 456 U.S. at 312, 102 S.Ct. at 1803 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). In Sec. 10(j) cases, the public interest is to ensure that an unfair labor practice will not succeed because the Board takes too long to investigate and adjudicate the charge. Thus, courts must consider the extent to which this interest is implicated under the circumstances of the particular case.
 
 
 53
 Next, as we have now held, likelihood of success must be weighed against the possibility of irreparable injury. Likelihood of success is no longer to be equated with "reasonable cause" to believe a violation has occurred, nor is it to be measured by whether the factual allegations are "not insubstantial and frivolous." Instead, "[a]s an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits[.]" Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir.1987) (quotation marks omitted).[5]
 
 
 54
 In assessing whether the Board has met its burden, it is necessary to factor in the district court's lack of jurisdiction over unfair labor practices, and the deference accorded to NLRB determinations by the courts of appeals. See NLRB v. City Disposal Sys., Inc., 465 U.S. 822, 829, 104 S.Ct. 1505, 1510, 79 L.Ed.2d 839 (1984) ("[O]n an issue that implicates [the Board's] expertise in labor relations, a reasonable construction by the Board is entitled to considerable deference[.]"); Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979) ("Of course, the judgment of the Board is subject to judicial review; but if its construction of the statute is reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute."). While the district court is not required to defer to the Board in deciding whether interim relief is "just and proper," it should evaluate the probabilities of the complaining party prevailing in light of the fact that ultimately, the Board's determination on the merits will be given considerable deference. By the same token, because it is the Board and not the district court which has primary responsibility for declaring federal labor policy, we agree with Judge Friendly that "[e]ven on an issue of law, the district court should be hospitable to the views of the General Counsel, however novel." Danielson, 494 F.2d at 1245. In short, the Board can make a threshold showing of likelihood of success by producing some evidence to support the unfair labor practice charge, together with an arguable legal theory.
 
 
 55
 If the respondent concedes the substance of the unfair labor practice charge, or if the Board demonstrates that it is likely to prevail on the merits, we presume irreparable injury. Nutri-Cology, 982 F.2d at 398. If the charge is disputed, or if the Board has only a fair chance of succeeding on the merits, the court must consider the possibility of irreparable injury.
 
 
 56
 In this connection, as well as in considering the balance of hardships, the district court must take into account the probability that declining to issue the injunction will permit the allegedly unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority. See Amoco Prod. Co., 480 U.S. at 545, 107 S.Ct. at 1404 ("If [environmental] injury is sufficiently likely ... the balance of harms will usually favor the issuance of an injunction to protect the environment."). Where the Board and the respondent each make a showing of hardship, the district court must exercise its sound discretion to determine whether the balance tips in the Board's favor.
 
 V
 
 57
 Because the district court applied the "reasonable cause"/"just and proper" law as it existed when the temporary injunction was issued, and we have instead held that there is no "reasonable cause" inquiry in Sec. 10(j) proceedings and that courts should apply traditional equitable criteria, we would normally remand to give the court an opportunity to reconsider in light of our newly-adopted standard. See, e.g., Aguirre v. Chula Vista Sanitary Serv. & Sani-Tainer, Inc., 542 F.2d 779, 781 (9th Cir.1976) (per curiam) (where district court erred in considering only likelihood of success, case remanded for application of sliding scale injunction test). However, no useful purpose would be served by doing so in this case, as the temporary relief granted has expired and the district court no longer has jurisdiction now that the Board has issued its final order. Therefore, we vacate the district court's opinion[6] and hold that a district court, exercising Sec. 10(j) jurisdiction, shall determine whether the temporary relief requested is "just and proper" in accordance with traditional equitable criteria considered in the context of the federal labor laws and the underlying purposes of Sec. 10(j), to protect the integrity of the collective bargaining process and to preserve the Board's remedial powers.[7]
 
 
 58
 VACATED.
 
 
 59
 SCHROEDER, Circuit Judge, with whom Circuit Judges BROWNING, TANG, and TROTT join, concurring in part and dissenting in part;
 
 
 60
 My disagreement is not so much in what the majority opinion says as in what it declines to say. The majority announces a newly articulated analysis for district courts to apply in NLRA preliminary injunction cases, but then declines to apply that analysis to the case before it.
 
 
 61
 Article III limits our jurisdiction to cases and controversies. When we assume jurisdiction of a moot case because it is capable of repetition yet likely to evade review, we routinely decide the merits. See, e.g., Sacramento City Unified Sch. Dist. v. Rachel H, 14 F.3d 1398 (9th Cir.1994); see also Burlington Northern R. Co. v. B.M.W.E., 481 U.S. 429, 431, 107 S.Ct. 1841, 1843, 95 L.Ed.2d 381 (1987); Johansen ex rel. NLRB v. San Diego County Dist. Council of Carpenters, 745 F.2d 1289 (9th Cir.1984) (per curiam). If, as the majority announces, this case is worthy of consideration because the dispute may recur between the parties, then this court has an obligation to explain how that dispute should be decided, and not merely render advisory standards for use by district courts in future cases.
 
 
 62
 Because I believe that under the court's own newly articulated analysis, the district court would have no option other than to enter a preliminary injunction, I would affirm.
 
 
 63
 Under our prior law, that the district court correctly and ably applied, we used a two-prong test to determine whether or not injunctive relief under Sec. 10(j) was appropriate. We instructed the district court to look first to see whether there was "reasonable cause," i.e. whether there was a factual and legal basis for the injunction. Then, the district court was to determine whether the relief was "just and proper," meaning that the district court was to determine whether the relief was appropriate in order to preserve the ability of the Board to grant relief in the future. See, e.g., Scott ex rel. NLRB v. El Farra Enters., Inc., 863 F.2d 670, 673-74 (9th Cir.1988); Miller v. California Pacific Medical Center, 788 F.Supp. 1112 (N.D.Cal.1992).
 
 
 64
 In order to conform the analysis more closely to the statutory language, and to harmonize our law with the apparent developing trend in other circuits, the majority opinion collapses the two steps into one "just and proper" inquiry and explains that to determine whether an injunction is "just and proper," the district court is to consider the "public interest" and weigh the likelihood of success against the degree of injury. Majority opinion at 458-459.
 
 
 65
 The majority recognizes that in Sec. 10(j) cases, the public interest is to protect the remedial power of the Board, and to ensure that unfair labor practices do not succeed before the Board is able to adjudicate the charge. Majority opinion at 451, 460. The majority further recognizes that the stronger the Board's legal and factual showing of probable success, the less the need for a showing of irreparable harm. Majority opinion at 459. Moreover, because the district court does not have jurisdiction to determine the merits of a claim under the NLRA, and because Congress has designated the Board and not the district court as the primary enforcer of labor relations matters, the district court owes great deference to both the Board's understanding of the facts underlying its decision to apply for an injunction, and to the Board's interpretation of the law. Majority opinion at 459.
 
 
 66
 Thus, under the majority's analysis, where the Board is able to support its charge with a reasonable basis in fact and an arguable legal position, the Board's threshold requirement is met; and if, on its showing of irreparable harm, the Board is able to establish that an injunction is necessary in order to preserve the remedial jurisdiction of the Board, then the injunction should be entered. If, rather than showing that it has a reasonable basis in law and fact for its position the Board is able to show that it is "likely to prevail on the merits," the injunction should issue and no further showing of irreparable injury is required. Majority opinion at 459.
 
 
 67
 I have no substantive disagreement with this analysis. I object only to the majority's failure to follow through with its opinion and apply its analysis to the case before us. The majority indicates that if the case were not moot, it would remand to the district court for reconsideration in light of its new standard. Majority opinion at 459-460. It does not indicate, however, what more the district court might consider that would justify a different result in this case, given the district court's findings that the Board was likely to succeed on the merits, and that the injunction was necessary to protect the Board's remedial power and prevent the union's destruction. See 788 F.Supp. at 1116.
 
 
 68
 Applying the majority analysis to this case, I find that the actual basis for the Board's Sec. 10(j) application is not disputed. The hospital admittedly refused to bargain with the nurses. 788 F.Supp. at 1114-15. The legal basis of the Board's position, that hospitals should be treated like other employers who, following a merger are required to bargain with represented employees in a single facility, is also, at the very least, an arguably valid position. See 788 F.Supp. at 1115-16; N.L.R.B. v. Burns Internat'l Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Accordingly, under the majority's analysis, if the district court found that an injunction was necessary in order to preserve the ability of the Board to remedy any unfair labor practice at the conclusion of the enforcement proceedings, the district court was required to enter the injunction. That is precisely what the district court found and precisely what the district court did. It found that if a preliminary injunction were not entered, the nurses' union would no longer represent employees in the single facility by the time the Board concluded its proceedings, and that an injunction for that reason should enter. As the court noted, "[i]f an injunction were not issued, after 45 years of representing the nurses at [the hospital,] CNA would cease to exist at the California campus." 788 F.Supp. at 1116. The finding of irreparable harm is unassailable, and the district court injunction should be affirmed.
 
 
 69
 I therefore dissent from the majority's decision to vacate the district court opinion without deciding that the district court properly entered the injunction.
 
 
 
 [1]
 In Johansen ex rel. NLRB v. San Diego County District Council of Carpenters, 745 F.2d 1289 (9th Cir.1984) (per curiam), we held that a union's appeal from a Sec. 10(l ) injunction ordering a 10-day hiatus in picketing and leafleting allegedly barred under Sec. 8(b)(4)(ii)(B) of the Act was the type of order that is capable of repetition, yet evading review. The 10-day order expired by its own terms well before review in this court was complete. We held that such an order could not be fully litigated, and that the same union reasonably could expect to find itself embroiled in litigation with the NLRB over the same issue. Id. at 1292-93
 In Eisenberg ex rel. NLRB v. Holland Rantos Co., 583 F.2d 100 (3d Cir.1978), the Third Circuit held that the Board's resolution of the underlying unfair labor practice charge didn't moot the appeal of a Sec. 10(j) injunction. Id. at 103 n. 6.
 
 
 [2]
 The complaining party is "the party who is raising the challenge." Gates v. Deukmejian, 987 F.2d 1392, 1408 (9th Cir.1992). By virtue of its filing the Sec. 10(j) petition and seeking a preliminary injunction, the NLRB was the complaining party in the district court. Both CPMC and the Board appealed the district court's ruling, and the Board sought rehearing en banc
 
 
 [3]
 The Senate Report expressed this concern as follows:
 Time is usually of the essence [in labor disputes] and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives--the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices....
 ....
 Experience under the National Labor Relations Act has demonstrated that by reason of lengthy hearing and litigation enforcing its order, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done.... [I]t has sometimes been possible for persons violating the act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or preserve the status quo pending litigation.
 S.Rep. No. 105, 80th Cong., 1st Sess. 8, 27 (1947).
 
 
 [4]
 This holding also aligns us with the Fifth Circuit, which, while not discussing Hecht, cited Danielson for the proposition that "[t]he Chancellor does not abdicate his powers merely upon a showing that the Regional Director's theories surpass frivolity." Boire ex rel. NLRB v. Pilot Freight Carriers, Inc., 515 F.2d 1185, 1193 (5th Cir.1975), cert. denied, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976)
 Those courts that adhere to the "reasonable cause"/"just and proper" standard, limiting the latter to whether relief is necessary to preserve the Board's remedial power, have not directly considered whether the analysis in Hecht and Romero controls. See Arlook ex rel. NLRB v. S. Lichtenberg & Co., 952 F.2d 367, 372 (11th Cir.1992); Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 30 (6th Cir.1988); NLRB v. Aerovox Corp., 389 F.2d 475, 477 (4th Cir.1967); Angle v. Sacks ex rel. NLRB, 382 F.2d 655, 660 (10th Cir.1967); cf. Kobell ex rel. NLRB v. Suburban Lines, Inc., 731 F.2d 1076, 1090-92 (3d Cir.1984) (citing Hecht, but for proposition that court of appeals, in reviewing Sec. 10(j) order, must be sure district court "focused upon" Act's "large objectives") (quotation marks omitted); Minnesota Mining & Mfg. Co. v. Meter ex rel. NLRB, 385 F.2d 265, 270-72 (8th Cir.1967) (following Tenth Circuit's holding in Angle that relief under Sec. 10(j) is "just and proper" upon showing of threat of remedial failure; while court cited Hecht and Warner Holding (relied on by the Court in Romero ), it did so in rejecting district court's conclusion that injunctive relief was proper on showing of "reasonable cause" alone).
 
 
 [5]
 Where the moving party shows only a "fair" chance of success on the merits, in contrast to "probable" success on the merits, the party also must show there are serious questions going to the merits of the case and that the balance of the hardships tips decidedly in its favor. Mosbacher, 968 F.2d at 977
 
 
 [6]
 Miller ex rel. NLRB v. California Pac. Medical Ctr., 788 F.Supp. 1112 (N.D.Cal.1992). We also vacate the panel's opinion, published at 991 F.2d 536 (9th Cir.1993)
 
 
 [7]
 See American Trading Transp. Co. v. United States, 841 F.2d 421, 426 (D.C.Cir.1988) (Ginsburg, R.B., J.) (in view of atypical posture of requests to review short-term agency orders capable of repetition but evading review, court construes remedy sought on appeal as in the nature of prospective declaratory relief); see also Guardian Moving & Storage Co. v. ICC, 952 F.2d 1428, 1433-34 (D.C.Cir.1992) (ICC orders granting emergency temporary authority reviewed although permanent contract had been granted by time of appellate decision; court declined to remand and instead vacated interim authorities and declared law to be applied in future); cf. DHL Corp. v. Civil Aeronautics Bd., 659 F.2d 941, 944 n. 4 (9th Cir.1981) (acknowledging D.C.Circuit rule, but finding it inapplicable because order at issue was unlikely to evade review)